Howard Strong, Esq. [S.B. # 069641]
Law Offices of Howard Strong
stronglaw@gmail.com
P.O. Box 570092
Tarzana, CA 91357-4031
(818) 343-4434, Fax (818) 343-7910

Attorney for Objector &
Intervenor C. Prada

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA HOFFMAN, an individual, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>CITIBANK (SOUTH DAKOTA), N.A., and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. SACV-06-571-AJG(MLGx)<br><br>**CLASS ACTION**<br><br>**(1) OBJECTIONS TO FINAL APPROVAL OF PROPOSED SETTLEMENT BY CLASS MEMBER C. PRADA;**<br>**(2) NOTICE OF INTENTION TO APPEAR AT HEARING ON FINAL APPROVAL JANUARY 31, 2011**<br>**(3) NOTICE OF INTERVENTION,**<br><br>Date: December 13, 2010<br><br>Time: 10:00 a.m.<br><br>Ctrm: 10D<br><br>Assigned to the Honorable Andrew J. Guilford, Courtroom 10D<br><br>Action Filed: May 5, 2006<br><br>Trial Date: Not set |

**TABLE OF CONTENTS**

1. INTRODUCTION & SUMMARY OF ARGUMENT ... 1

2. SUFFICIENT INFORMATION FOR CLASS MEMBERS TO EVALUATE THE PROPOSED SETTLEMENT HAS NOT BEEN PROVIDED BY SETTLING PARTIES—SUCH INFORMATION SHOULD BE REQUIRED ... 1

3. SETTLING PARTIES AGREEMENT DOES NOT COMPLY WITH NEW NINTH CIRCUIT AUTHORITY & DOES NOT TAKE THAT AUTHORTITY INTO ACCOUNT—DOES NOT PROVIDE NEEDED INFORMATION ON FEE & *CY PRES* ISSUES ... 2

4. NOTICE & CLAIMS PROCEDURE INADEQUATE ... 3

5. CITIBANK SHOULD NEITHER BE NOR CONTROL THE SETTLEMENT ADMINISTRATOR ... 7

6. SETTLEMENT DOES NOT TAKE INTO ACCOUNT RECENT NINTH CIRCUIT AUTHORITY WHICH GREATLY STRENGTHENS CASE ... 8

7. AT LEAST ONE SUB-CLASS IS NEEDED ... 9

8. PROPOSED SETTLEMENT ATTEMPTS TO PLACE UNLAWFUL RESTRICTIONS ON OBJECTORS ... 9

9. CONCLUSION ... 10

10. NOTICE OF INTENT TO APPEAR AT HEARING & REQUEST TO INTERVENE ... 10

1. **INTRODUCTION & SUMMARY OF ARGUMENT**

Objector C. Prada is and has been for a period within the class period the holder of credit card accounts with Defendant Citibank (South Dakota), N.A ("Citibank").

She received a sketchy notice of class membership with at least one of her statements from Citibank in the Summer of 2010.

Ms Prada hereby respectfully objects to the proposed settlement because it is not fair, reasonable and adequate for the following stated reasons.

2. **SUFFICIENT INFORMATION FOR CLASS MEMBERS TO EVALUATE THE PROPOSED SETTLEMENT HAS NOT BEEN PROVIDED BY SETTLING PARTIES—SUCH INFORMATION SHOULD BE REQUIRED**

It is not possible for class members to determine the value of the settlement because no solid information has been provided in Settling Parties' [Defendant Citibank (South Dakota), N.A. ("Citibank") and Plaintiff Hoffman are the "Settling Parties"] papers in support of the proposed settlement as to, inter alia, (1) the size, or even anything close to the approximate size, of the class, (2) the number of overcharges made by Citibank, (3) the total amount of the overcharges, or, (4) how the overcharges were made and (5) how they were calculated by Citibank.

Indeed, the posted notice on the internet is unclear as to just how a Citibank customer may determine if he or she is in the class since it appears that the determinative records (if such exist for all who may be in the class) are in Citibank's sole possession and control. In effect, the class definition is so unclear that it appears Citibank credit card customers may be unable to determine whether they have a claim or not.

Settling Parties should be required to provide full information on class size, damages, and who is in the class, etc. so that Citibank credit card customers will have some reasonable way to know whether the proposed settlement is in the ballpark, if they are entitled to compensation and even whether or not they are in the class.

**3.     SETTLING PARTIES AGREEMENT DOES NOT COMPLY WITH NEW NINTH CIRCUIT AUTHORITY & DOES NOT TAKE THAT AUTHORTITY INTO ACCOUNT—DOES NOT PROVIDE NEEDED INFORMATION ON FEE &** *CY PRES* **ISSUES**

The Settling Parties have not complied with Federal Rule of Civil Procedure 23 as recently interpreted by the Ninth Circuit and have not complied with class members' right to due process of law.

They have not, inter alia, filed and made available to class members full information on Class Counsel's fee application prior to the time for filing objections.

> " [A] schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates."
> *In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir., Aug. 27, 2010) 2010 U.S. App. LEXIS 17189

Class Counsel's fee application must, it is submitted, be filed long before the time for objections has passed so that Class Counsel's request for 25% of ten million dollars (at present made without any documented justification) may be knowledgably accepted or opposed by class members.

- 2 -                                    No. SACV-06-571-AJG(MLGx)
Objections to Proposed Settlement C. Prada

As to *cy pres*: in line with *Mercury*, supra, and as a matter of, it is submitted, just plain good practice in avoiding troublesome *cy pres* issues, the Settlement Agreements and Settling Parties <u>failure to identify, fully (or at all) and in advance of the date for objections, the recipients of the *cy pres* funds is improper and impinges on class members due process rights</u>.

The *cy pres* fund is likely to be very large; almost certainly in the millions of dollars, especially in view of the inadequate and improper notice and claims procedures discussed elsewhere in these objections.

Yet, Settling Parties decide, <u>without any possible input from class members</u>, how the *cy pres* funds will be dispensed. See Settlement Agreement, ¶ III F(5) at pages 11-12.

Indeed, it appears that Citibank may well intend to send the funds to some of its executives' favorite charities (probably not groups dedicated to protecting credit card users' legal rights) or to meet Citibank contribution commitments that would otherwise come out of Citibank profits thereby chopping Citibank's actual payments under the proposed settlement.

<u>The Settling Parties should be required to identify where they want to direct the *cy pres* monies long before the time for objections is closed</u>.

Citibank should not be permitted to use the funds for non-class purpose related groups or to meet previous contribution commitments. The funds should go to worthy groups working in the credit card consumer protection area.[1]

### 4.    NOTICE & CLAIMS PROCEDURE INADEQUATE

The notice provided the class members is also inadequate in that it fails

---

[1] Among such groups might be the Consumers Union, the Consumer Federation of California, Consumer Watchdog, the Western Center on Law and Poverty, the Privacy Rights Clearinghouse, California and national PIRGs (Public Interest Research Groups) and the National Consumer Law Center.

1 | to follow the rule set out by the Supreme Court.

2 |      "But when notice is a person's due, process which is a mere
3 |      gesture is not due process. **The means employed must be**
4 |      **such as one desirous of actually informing the absentee**
5 |      **might reasonably adopt** to accomplish it."
6 |      *Mullane, v. Central Hanover Bank* (1950) 339 U.S. 306, 315; 70 S. Ct. 652; 94 L. Ed. 865 (bold added). Accord,
7 |      *Dusenbury* v. *U.S.* (2002) 534 U.S. 161, 169; 122 S. Ct. 694.

8 |      Here, the notice is so inadequate and the other defects in the Settling
9 | Parties agreement so great that it appears there will be a tiny number of claims
10 | relative to what appears to be the very large (evidently in the many millions)
11 | number of class members

12 |      What's wrong with the Settling Parties' notice?

13 |      Among the numerous defects:

14 |      1.    No way to tell if adequate notice has been given. The primary
15 | claimed notice is by a miniscule statement to look online for more information,
16 | hidden, at least in some cases, on a way back page at the end of a solitary
17 | mailed statement. It is noteworthy that the Settlement Agreement does not
18 | require the purported notice be on page one of the mailed statement, allowing
19 | Citibank to bury it far back on unread pages of that statement.

20 |      And, since Citibank is not telling how many are in the class there is no
21 | way to assess what percentage of the class got even that notice.

22 |      Require Citibank provide the number of class members, number of
23 | accounts held by class members and the number of mailed notices sent out—
24 | then it should be possible to find out what percentage of the class received the
25 | mailed notice.

26 |      A reasonable estimate, based on the eight year class period and the
27 | turnover of accounts (since Citibank did not mail notice to any class members
28 |

with closed accounts), might be that less than ten percent of class members got the postal notice.

2. No email notice. Although Citibank doubtless has the email addresses of many, if not almost all, of its customers, the Settlement Agreement does not provide for any email notice. Email notice is very cheap and perhaps more effective than regular mail notice (especially when the mail notice is not sent to all class members, as here, where anyone not currently getting statements from Citibank in the Summer of 2010 did not get postal notice—what about notice for all the class members who had closed their accounts before the Summer of 2010?)

3. No internet notice on Citibank websites. The Settling Parties agreement specifically provides no information about the settlement will be posted on its websites (such as those regularly accessed by customers using online banking). Such posting would be a very inexpensive and effective way to reach class members.[2]

4. Even the minimal postal mail notice sent out to some of the class members in the Summer of 2010 was often "buried" in the back pages of the statements.

5. Citibank decided how and where to place the postal notice on its statement—and there was no requirement that there be a large headline on the envelope or front page of the statement about the important legal notice with the statement.[3] Further, there was no claim form required to be printed on the

---

[2] Internet notice has generated over twenty-five times the response of traditional printed published notice in a Federal class action. Comment: *Class Action Notice: The Internet's Time Has Come* (2003) 2003 U Chi. L.F. 739, 761 and, *id.* at 772 "… a scheme of internet notice is necessary to provide the "best practicable" notice."

[3] Settlement Agreement at ¶ III 3(c) at page 7:
"3    Statement Notice: Citibank will provide individual notice to all Persons in the Settlement Class to whom Citibank mails or delivers a periodic statement in the month (or billing period) in which the mailing or delivery will occur as to the particular portfolio at

statement—something that could have very easily and cheaply been done—if there had been a real interest in notifying class members and having them make claims.

6. There is no postal notice to anyone to whom Citibank did not send a statement in the Summer of 2010. Thus, what is evidently the largest part of the class got no notice. Why couldn't the many class members for whom Citibank has email addresses been sent full notice electronically, at a minimum? No reason, except an apparent desire not to inform class members.

Also, the claims procedure is needlessly costly and complex.

Why not provide email notice to all class members Citibank has email addresses for?

And, why not allow claims for the munificent recovery of $18 (or less) to be made by email as well.?

A class members rational assessment of the postal mail claim procedure is likely to be that buying a first class stamp and filling out a form that Citibank might claim makes the class member a perjurer for a chance at $18 (or less, perhaps much, much less) is likely to be: "don't do it." Email notice and making of claims by email would doubtless dramatically increase the number of claims—as would dropping the rather silly demand that the claim form be signed under penalty of perjury.

There is no good reason not to require emailed notice and not to permit claims to be made by email.

---

issue. **At Citibank's sole discretion, the notice may be through a statement message included on the statement, a billing insert accompanying the statement, a solo mailing or a combination thereof.** The Statement Notice shall direct recipients to the location of the Internet Notice and Claim Form. If mailed, the Statement Notice shall be mailed to the then-current address reflected in Citibank's computerized account records. **No skip tracing or re-mailing of returned mail will be required**". (bold added)

## 5.   CITIBANK SHOULD NEITHER BE NOR CONTROL THE SETTLEMENT ADMINISTRATOR

The Settlement Agreement improperly allows Citibank to be the class administrator or allows Citibank in its sole discretion to choose the settlement administrator.[4]

Citibank, in its "sole discretion" is going to decide what claims to pay (if any actually get paid under this cockamamie scheme).

As Professor Newberg states: usually the defendant has no responsibility for distribution.  Newberg on Class Actions 4th (West 2002) at § 12.23.

And, the Manual for Complex Litigation Fourth, § 21.612, notes Claims Administrators should <u>be determined by the Court to be disinterested and free from conflicts</u>.

Here, <u>the Court</u> <u>(certainly not Defendant Citibank)</u> should approve an independent, third-party administrator—of which there are several available, e.g., Gilardi & Co. of San Rafael, CA, Rosenthal & Co. of Novato, CA and Rust Consulting of Minneapolis, MN.

The conflicts are obvious.  Citibank's interests do not coincide with the interests of class members.

There is no good reason to allow the Defendant to also be the settlement administrator.  An independent administrator should be required; one neither chosen nor controlled by Citibank.

---

[4]  ¶ III H(1) at page 14 of Settlement Agreement:
"1.   Settlement Administrator: The settlement will be administered in house by Citibank or, at Citibank's **sole discretion**, by an independent third-party administrator **selected by Citibank**. In the event Citibank elects to select a third-party administrator, the administrator shall be subject to approval by Class Counsel, which shall not be unreasonably withheld. The third-party administrator shall be paid from the Settlement Fund." (bold added)

- 7 -   No. SACV-06-571-AJG(MLGx)
Objections to Proposed Settlement C. Prada

**6. SETTLEMENT DOES NOT TAKE INTO ACCOUNT RECENT NINTH CIRCUIT AUTHORITY WHICH GREATLY STRENGTHENS CASE**

In the recently decided appeal in *Bateman v. American Multi-Cinema, Inc.*, __ F.3d__, 2010 U.S. App. LEXIS 19934 (9th Cir, Aug. 27, 2010), the Ninth Circuit, interpreting the Fair and Accurate Credit Transactions Act, reversed the Trial Court's denial of certification because the penalty sought was disproportionate to the alleged harm done by Defendant.

*Bateman*, supra, it is submitted, effectively removed the previously substantial (and often used) defense against class certification in consumer class actions where a statutory penalty exists.

This defense was evidently much in mind when the Settlement Agreement was written since it contains a rather obvious effort to eliminate statutory damages payable to class members (Please see ¶ F 4 in footnote below).[5] However, in light of *Bateman*, supra, it is submitted this defense no longer exists and there is an excellent chance Citibank is liable for very substantial statutory penalties.

Under the Settlement Agreement, the class members give up their claims (including to statutory penalties) under the Truth in Lending Act (TILA) and under California's Song Beverly Credit Card Act of 1971 (Civil Code § 1747 et seq.) and similar statutes in other States.

The Settlement Agreement effectively limits the class members' claims to unfair competition claims <u>which do not attract a statutory penalty</u>, unlike claims

---

[5] See Settlement Agreement, ¶ F 4 at page 11:
"<u>Attribution of Statutory Damages</u>: Plaintiff and Class Counsel, on behalf of all Settlement Class Members, agree that $500,000 of the Settlement Amount shall consist, and constitute full payment, of statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(B), such that no further statutory damages may be awarded against any Released Parties in any class action or series of class actions within the meaning of 15 U.S.C. § 1 640(a)(2)(B) and/or with respect to any Released Claims."

under TILA and the Song-Beverly Act which do provide such penalties.

It appears that viable claims for class wide civil penalties for violations of TILA and the Song-Beverly Act are now available for what appears to be a very large number of class members; although the proposed settlement does not provide any such statutory payments to class members.

Perhaps fear of statutory penalties is one reason we are not provided any real information on class size.

### 7. AT LEAST ONE SUB-CLASS IS NEEDED

The Settling Parties settlement treats all class members the same. However, it appears that, following the Ninth Circuit's *Bateman* decision, supra, there is an excellent claim for additional compensation for, e.g. Californians and residents of other States which provide extra protection for credit card users via civil penalties for violation of their respective State statutes.

Thus, at least one sub-class is needed, but, the Settling Parties agreement makes no provision for any sub-class.

### 8. PROPOSED SETTLEMENT ATTEMPTS TO PLACE UNLAWFUL RESTRICTIONS ON OBJECTORS

The Proposed Settlement attempts to place unlawful requirements on objectors—contrary to Supreme Court authority. In *Devlin v. Scardelletti* (2002) 536 U.S. 1, the Court held that objectors who appear at the fairness hearing have the right to appeal approval of a proposed settlement. The *Devlin* Court did not expand that requirement of appearing at the hearing to include other requirements such as making written objections by any certain date prior to the final approval hearing.

Nonetheless, and contrary to *Devlin*, the Settling Parties' agreement (and the Notice they wrote) purports to require objectors to make full written objection long before the fairness hearing on pain of not being heard.

This purported term in the Settling Parties' agreement is, it is submitted, unlawful.

The Notice is intentionally misleading (and obviously meant to discourage objectors) in claiming that objectors will not be heard if they do not file full written objections and a notice that they will appear long, long before the fairness hearing.

It is respectfully submitted that a settlement agreement containing unlawful terms and founded on a misleading notice to class members may not be properly approved.

### 9. CONCLUSION

It is respectfully submitted, for the above stated reasons that this Honorable Court should not grant final approval of the proposed settlement.

### 10. NOTICE OF INTENT TO APPEAR AT HEARING & REQUEST TO INTERVENE

Objector Prada also hereby states Objector's intention to appear at the hearing presently set for December 13, 2010 at 10:00 a.m.; and respectfully requests that Objector be granted leave to intervene in this action and that Objector be granted full access to discovery taken in this matter.

DATED: November 8, 2010

Respectfully submitted,

       by   */s/ Howard Strong*
       Howard Strong, Attorney for Objector C. Prada

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

I, the undersigned, am employed at the Law Offices of Howard Strong, Postal Box 570092, Tarzana, CA 91357-0092 in the County of Los Angeles.
On the date below, I served the foregoing document(s) described as:

## Objections by C. Prada to Final Approval of Proposed Class Action Settlement

__ by placing true copies thereof enclosed in a sealed envelope or envelopes addressed as stated on the attached mailing list:

_X_ by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

| CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|
| Barry L. Kramer<br>Law Offices of Barry L. Kramer<br>12428 Promontory Road<br>Los Angeles, California 90049 | Julia B. Strickland<br>Stroock & Stroock & Lavan LLP<br>2029 Century Park East, 16th Floor<br>Los Angeles, CA 90067 |

BY PERSONAL SERVICE: __ I delivered such envelope or envelopes by hand:

BY MAIL: _X_ I deposited such envelope or envelopes in the United States mail at Los Angeles, California. The envelope or envelopes were mailed with first class postage thereon fully prepaid.

BY EXPRESS MAIL: __ I deposited such envelope or envelopes in the United States mail at Los Angeles, California. The envelope or envelopes were mailed with Express Mail postage thereon fully prepaid and in an envelope provided by the United States Post Office for Express Mail service.

BY FAX __ I faxed a copy of aforesaid document to Fax # at approximately on the date below.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Date: November 8, 2010

H. Strong: */s/ Howard Strong*