1  Darrell Palmer (SBN 125147)
   Email:  darrell.palmer@palmerlegalteam.com
2  Janine R. Menhennet (SBN 163501)
   Law Offices of Darrell Palmer
3  603 North Highway 101, Ste A
   Solana Beach, California 92075
4  Telephone: (858) 792-5600
   Facsimile: (858) 792-5655
5

6  Attorney for Objectors Joseph Balla
   Andrew J. Cesare and Todd Bates
7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

10

11 LAURA HOFFMAN, an individual, on      )  Case No. 06-cv-571 AJG (MLGx)
   behalf of herself and all others similarly )
12 situated,                             )  **OBJECTIONS TO PROPOSED CLASS**
                                         )  **ACTION SETTLEMENT**
13                                       )
                   Plaintiff,            )
14                                       )
                                         )
15 v.                                    )
                                         )  Date:  December 13, 2010
16                                       )  Time:  10:00 a.m.
   CITIBANK (SOUTH DAKOTA), N.A.,        )  Place: Courtroom 10D
17 and DOES 1 through 10, inclusive,     )  Judge: Hon. Andrew J. Guilford
                                         )
18                                       )
                   Defendant.            )
19                                       )
                                         )
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     DIFFERENCES IN STATE LAWS MANDATE A DIFFERENTIAL
       ALLOCATION OF THE CONSUMER REMEDIES PROVIDED ............ 1

II.    CONSUMER PROTECTION STATUTES ARE IN CONFLICT ............  4

       1.    Reliance by Plaintiffs ……………………………………..     4

       2.    Eligibility to Maintain Class Actions …………………………..   5

       3.    Scienter of Defendants …………………….……          6

III.   THE PREDOMINANCE INQUIRY IS PARAMOUNT, EVEN WHEN A
       SETTLEMENT IS PENDING …………………………………………..6

IV.    THE FEE REQUEST MUST BE ANALYZED UNDER STATE
       LAW …………………………………………………………………….. 7

V.     CLASS COUNSEL FAILED TO FILE THE FEE REQUEST PRIOR
       TO THE OBJECTION DEADLINE, AS REQUIRED BY
       RULE 23 AND MERCURY ……………………………………………   8

VI.    THE REQUESTED FEE MUST BE CLOSELY ANALYZED AND
       EQUITABLY AWARDED ……………………………………………… 9

VII.   THERE IS INSUFFICIENT INFORMATION REGARDING THE
       ADQUACY OF THE REMEDY …………………………………….   12

VIII.  THE CY PRES DISTRIBUTION IS ARBITRARTY AND UNFAIR ……. 12

IX.    JOINDER IN OTHER OBJECTIONS…………………………………… 14

X.     CONCLUSION……………………………………………………… 15

i

# TABLE OF AUTHORITIES

## CASES

*Amchem Products*
521 U.S. at 620 ……………………………………………………… 3, 7

*Arnold v. Microsoft Corp.*
(Ky.Cir.Ct. 2000) 2001 WL 193765 …………………………….... 5

*Baker v. Family Credit Counseling Corp.*
(E.D.Pa. 2006) 440 F.Supp.2d 392 ……………………………….... 7

*Bruno v. Superior Court*
(Ct. App. 1980) 179 Cal Rptr. 342, 347 ……………………………… 13, 14

*Chin v. Chrysler Corp.*
(D.N.J. 1998) 182 F.R.D. 448, 457-61 …………………………….... 5

*Cundiff v. Verizon California, Inc.,*
(1st Dist., 2008) 167 Cal.App.4th 718 ……………………………… 13

*Denney v. DeutscheBank AG*
(2d Cir. 2006) 443 F.3d 253, 270 ………………………………….. 3

*Dodson v. U-Needa Self Storage, LLC*
(2004) 32 Kan.App.2d 1213 ……………………………………….. 6

*Dunk v. Ford Motor Co.*
(1996) 48 Cal. App. 4th 1794, 1809-1811 ……………………….... 10

*Feeney v. Disston Manor Personal Care Home, Inc.*
(Pa. Super. 2004) 849 A.2d 590, 597 …………………………….... 5

*In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.*
(7th Cir. 2002) 288 F.3d 1012, 1017 …………………………….. 2

*In re Cincinnati Gas & Electric Co. Securities Litigation*
643 F. Supp. 148, 152 (S.D. Ohio 1986) ………………………….. 11

*In Re Copley Pharmaceutical, Inc.*
1 F. Supp. 2d 1407 (Wyoming, 1998) ……………………………... 11

ii

*In re Ford Motor Co. Ignition Switch* D.N.J.

(1997) 174 F.R.D. 332, 347-48 ……………………………………………….....   5, 7

*In re General Motors Corp. Dex-Cool Products Liability*

(S.D.Ill. 2007) 241 F.R.D. 305, 315 …………………………………………….... 5, 7

*In re Grand Theft Auto Video Game Consumer Litigation*

(S.D.N.Y. 2008) 251 F.R.D. 139, et seq …………………………………....... 3, 4, 5, 6, 7

*In re Mercury Interactive Corp. Securities Litigation*

(9th Cir. 2010) 618 F.3d 998, 993-94 ………………………………………….... 7, 8

*In re Microsoft I-V Cases*

(2006) 135 Cal. App. 4th 706, 724 ………………………………………………....   12

*In re Pharm. Indus. Average Wholesale Price Litigation*

230 F.R.D. at 84-85 ……………………………………………………………....   6, 7

*In re Relafen Antitrust Litig.*

(D.Mass. 2004) 225 F.R.D. 14; 346 F.Supp.2d 349 …………………………….   2, 7

*In re Vitamin Cases*

107 Cal.App.4th at p. 826 …………………………………………………....   13

*In re Warfarin [Sodium Antitrust Litigation]*

(3d Cir. 2004) 391 F.3d 516, 529-30 ………………………………………….   3

*In re Wireless Telephone Federal Cost Recovery Fees Litigation*

MDL 1559 (W.D. Mo. April 20, 2004) ………………………………………....   10

*In re Zyprexa,*

2008 WL 2696916 at 138 ……………………………………………………....   7

*Kessler v. Fanning*

(Tex. App. 1997) 953 S.W.2d 515, 521 ………………………………………....   6

*Ketchum v. Moses*

(2001) 24 Cal.4th 1122 ……………………………………………………....   10

*Leallao v. Beneficial California, Inc.*

(2000) 82 Cal. App. 4th 19, 37-39 ……………………………………………....   10

iii

*Lynas v. Williams*
(1995) 216 Ga. App. 434 ……………………………………………… 5

*Mangold v. California Public Utilities Comm'n*
(9th Cir. 1995) 67 F.3d 1470, 1478 ……………………………… 8

*McLaughlin v. American Tobacco Co.*
(2d Cir. 2008) 522 F.2d 215, 223 ………………………………… 5, 6

*Northern Heel Corp. v. Compo Indus.*
(1st Cir. 1988) 851 F.2d 456, 475 ……………………………… 8

*Ortiz v. Fibreboard Corp.*
(1999) 527 U.S. 815 ……………………………………………… 2

*Ramos v. Countrywide Home Loans, Inc.*
(2000) 82 Cal. App. 4th 615, 622-624 ………………………… 10

*Rawlings v. Prudential-Bache Properties, Inc.*
9 F. 3d 513, 516 (6th Cir. 1993) ………………………………… 11

*S. States Police Benevolent Assn, Inc. v. First Choice Armor & Equip., Inc.*
(D.Mass. 2007) 241 F.R.D. 85, 93 ……………………………… 7

*Sam v. Beaird*
(Ala.Civ.App. 1996) 685 So.2d 742, 744 ……………………… 6

*Security Mutual Life Ins. Co. v. Contemporary Real Estate Assoc.*
(3d Cir. 1992) 979 F.2d 329, 331-32 …………………………… 8

*Serrano v. Priest*
(1997) 20 Cal.3d 25 ……………………………………………… 10

*Skelton v. General Motors Corp.,*
860 F 2d 250, 253 (7th Cir. 1988), cert denied,
493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989)………… 11

*Small v. Lorillard Tobacco Co.*
(N.Y. 1999) 94 N.Y.2d 43 ……………………………………… 6

06-CV-571-AJG (MLGx)
OBJECTIONS OF JOSEPH BALLA, ANDREW J. CESARE AND TODD BATES TO PROPOSED
CLASS ACTION SETTLEMENT

*State of California v. Levi Strauss & Co.*
(1986) 41 Cal 3d. 460, 472 ......................................................... 12, 13, 14
*Sylvester, et al. v. Cigna Corp.,*
(D.Me. 2005) 369 F.Supp.2d 34, 44 ........................................... 12
*Thompson v. Jiffy Lube Int'l, Inc.*
(D.Kan. 2008) 250 F.R.D. 607, 624-26 ....................................... 5
*Wise v. Popoff*, et al.
835 F. Supp. 977, (E.D. Mich. 1993) ........................................... 11

## STATUTES

California Civil Code Section 1782(a)(1) ...................................................5
Federal Rules of Civil Procedure
    23 ............................................................................... 7
    23(a) ......................................................................... 2
    23(h) ......................................................................... 11
Welfare and Institutions Code sections 15610.30 *et seq.* ...............................3

## OTHER STATE STATUTES

Ala. Code §8-19-10(f) ........................................................... 5
Alaska Stat. Ann. §45.50.535(b)(1) ........................................... 5
Colo. Rev. Stat. Ann. §6-1-105(l)(u) ......................................... 6
Ga. Code Ann. §10-1-399(a) .................................................... 5
Kan. Stat. Ann. §50-634(g) ..................................................... 5
La. Rev. Stat. Ann. §51:1409(A) ............................................... 5
Miss. Code Ann. §75-24-15(4) ................................................. 5
Mo. Ann. Stat. 407.025(7) ....................................................... 5
Mont. Code Ann. §30-14-133W ................................................ 1
N.J Stat. Ann. §56:8-20 ......................................................... 5
N.M. Stat. Ann. §57-12-10(B) .................................................. 1
Nev. Rev. Stat. Ann. §598.0979(l) ............................................. 6
Tex. Bus. & Com. Code §17.50(a)(1)(B) ..................................... 5
Wyo. Stat. Ann. §40-12-108(a) ................................................ 5

## TREATISES

Manual for Complex Litigation (Fourth), §22.634, p. 412 (2004) ....................... 8

v

COME NOW, JOSEPH BALLA, ANDREW J. CESARE and TODD BATES ("Objectors") Class Members to this action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class Action Settlement, give notice of their counsel's intent to appear at the December 13, 2010, settlement hearing, and request an award of an incentive fee for serving as unnamed class member objector.

Objectors JOSEPH BALLA, ANDREW CESARE and TODD BATES represent to the Court that they are Class Members, holding Citibank credit card accounts during the class period and being charged retroactively inflated interest rates, and are qualified to make claims for the proposed relief as set forth in the NOTICE OF CLASS ACTION SETTLMENT.  Their credit card numbers will be provided to Class Counsel upon request but are being withheld for purposes of this public filing.

## I. DIFFERENCES IN STATE LAWS MANDATE A DIFFERENTIAL ALLOCATION OF THE CONSUMER REMEDIES PROVIDED

The proposed Class cannot be certified.  Consumer protection laws of the states which are contemplated in the class description are significantly different.  The proposed settlement cannot be approved because it fails to recognize, and apply, significant differences among the consumer protection laws and remedies. The complaint on file in this matter alleges violations in all fifty states under different consumer protection statutes.

Each state provides different remedies for consumer protection statutes.  For example, in New Mexico, an aggrieved consumer is entitled to the greater of actual damages or $100, whichever is greater (N.M. Stat. Ann. §57-12-10(B)), while in Montana, a consumer can recover the greater of actual damages or $500 (Mont. Code Ann. §30-14-133W).  This makes a claim in Montana five times more valuable than a claim in New Mexico and more valuable still than in a state with no enhanced damages for consumer injury.  The problem is that a Montana class member should get $18 **plus** $500, and a New Mexico class member should get $18 **plus** $100.  This disparity defeats predominance under Rule 23.

1

The settling parties seek to certify a class consisting of residents from all 50 states who were allegedly systematically, and without notice, "cheated" by Citibank. However, the clear mandate in recent federal consumer protection class actions is that (1) certification must be rejected, and (2) where certification is permitted, the settlement must be structured to accommodate the differences among the states' statutes.

Under Rule 23(a), Class Counsel must show that the interests of the representative party do not conflict with the interests of any of the absent class members. The proposed settlement fails under this requirement, since there is an intra-class conflict of interest that renders Class Counsel, as well as the class representatives, inadequate. Specifically, the remedy of providing everyone with the same $18 check accommodates some states' laws, and defies others, as described above. While it may seem burdensome to engage in a state-by-state analysis, many courts have undertaken that burden in the interests of equity and of permitting a class settlement to be approved. As appellate courts have instructed, if it is too burdensome to perform a proper choice-of-law analysis, the appropriate remedy is decertification of the class, not to gloss over the issue and split things up equally. *See, In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.* (7th Cir. 2002) 288 F.3d 1012, 1017 ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules."). Decertification is not required, however, if the Court (or Class Counsel) can rationally divide the class to factor in the applicable consumer protection laws, as the court did in *In re Relafen Antitrust Litig.* (D.Mass. 2004) 225 F.R.D. 14; 346 F.Supp.2d 349.

In *Ortiz v. Fibreboard Corp.* (1999) 527 U.S. 815, the Supreme Court noted that one factor counseling against certification of the settlement class was the fact that certain claimants "had more valuable claims . . . the consequence being an . . . instance of disparate interests. *Id.* at 857. The Court therefore held that when class members have claims of varying strength or merit, it is an *abuse of discretion* to approve a settlement that treats them all the same." *Id.* This is clear from the example above, where a

2

---

OBJECTIONS OF JOSEPH BALLA, ANDREW J. CESARE AND TODD BATES TO PROPOSED CLASS ACTION SETTLEMENT

1  consumer claim in Montana is five times as valuable as a consumer claim in New

2  Mexico.  To be legally accurate, consumers in Montana should receive a greater benefit

3  than consumers in New Mexico.

4      Another factor weighing against certification is the fact that in California, such

5  fraud/violation may constitute elder abuse, entitling those class members over the age of

6  65 to heightened damages under the Welfare and Institutions Code sections 15610.30 *et*

7  *seq.*  The myriad situations which may exist in the context of these allegations seem to

8  preclude class certification, unless Class Counsel, or the Court, undertakes a

9  comprehensive review of each state's laws and recategorizes the class into comparable

10  groups respecting each state's requirements.

## II. CONSUMER PROTECTION STATUTES ARE IN CONFLICT

12      Recently, class certification was rejected under circumstances similar to those here.

13  In *In re Grand Theft Auto Video Game Consumer Litigation* (S.D.N.Y. 2008) 251 F.R.D.

14  139, District Judge Shirley Wohl Kram performed a thorough analysis and reluctantly

15  concluded that a nationwide class must be decertified because variations in consumer

16  protection laws precluded a finding that common questions of law predominated.  The

17  court held that each class member's state of purchase applied to each claim, requiring

18  application of laws of 50 states and the District of Columbia.  *Id.* at 149.  She relied on a

19  long line of class actions which reached the same result:

> The predominance inquiry – as distinguished from the trial-manageability
> inquiry – should not be watered down merely because the parties have
> entered a proposed settlement. *Amchem Products,* 521 U.S. at 620; *Denney*
> *v. DeutscheBank AG* (2d Cir. 2006) 443 F.3d 253, 270; *In re Warfarin*
> *[Sodium Antitrust Litigation]* (3d Cir. 2004) 391 F.3d 516, 529-30.  Under
> the facts of this case, differences in the applicable state laws go to the heart
> of Settlement Class members' substantive claims, and thus undermine the
> Settlement Class' cohesiveness.  Therefore, certification of the Settlement
> Class is especially inappropriate, despite the existence of the Settlement.

Individual Settlement Class members face distinctly different
potential legal obstacles to recovery.  For example, the reliance issue is

3

irrelevant to Settlement Class members from states not requiring a showing of reliance to make out a claim for consumer fraud [citations to Kansas, New Jersey, Delaware, and Arizona laws], while reliance is of the essence to those Class members who purchased [the videogame] in reliance states [citations to Texas and Wyoming laws].

*In re Grand Theft Auto Video Game Consumer Litigation* (S.D.N.Y. 2008) 251 F.R.D. 139, at 159-60.  Judge Wohl Kram compared numerous states with respect to proof requirements, limitations periods, and other critical factors:

> Most of the courts that have addressed the issue have determined that the consumer-fraud and breach-of-warranty laws in the fifty states differ in relevant respects.  *See, Thompson v. Jiffy Lube Int'l, Inc.* (D.Kan. 2008) 250 F.R.D. 607, 624-26 (consumer fraud); *In re General Motors Corp.* (S.D.Ill. 2007) 241 F.R.D. 305, 316-19 (warranty); *Chin v. Chrysler Corp.* (D.N.J. 1998) 182 F.R.D. 448, 457-61 (consumer fraud and warranty); *In re Ford Motor Co. Ignition Switch* D.N.J. (1997) 174 F.R.D. 332, 347-48 (consumer fraud and warranty). . . .  There are many relevant differences in the states' consumer-fraud and warranty laws.  Because these differences are all relevant – indeed, some of them are outcome determinative . . . there are actual conflicts among the states' consumer-fraud and warranty laws.

*In re Grand Theft Auto Video Game Consumer Litigation* (S.D.N.Y. 2008) 251 F.R.D. 139, at 147.  This discussion is appropriate, and dispositive in this case, because the claims in this action stem from violation of consumer protection statutes, in the nature of consumer fraud: "As a result of the backdated rate increases without warning or advance notice described above, Citibank wrongfully imposed illegal, unfair, unconscionable, and punitive rate increases and finance charges in the nature of illegal penalties, on thousands of customers' accounts in a manner that intentionally denied them the ability to reject such increases or mitigate their impact." Second Amended Complaint at 4, lines 18-23.

Examination of the issues exposes that the application of the states' different laws leads to irreconcilable conflict for the proposed class.

**1. Reliance by Plaintiffs.**

4

Reliance is an element of consumer fraud in some states, including Texas, Wyoming, Georgia, and Pennsylvania. *See, e.g.,* Tex. Bus. & Com. Code §17.50(a)(1)(B); Wyo. Stat. Ann. §40-12-108(a); *Lynas v. Williams* (1995) 216 Ga. App. 434; *Feeney v. Disston Manor Personal Care Home, Inc.* (Pa. Super. 2004) 849 A.2d 590, 597.

But the alleged uniformity of the defendants' "unlawful, unfair, and deceptive" (SAC at 9) conduct is insufficient, on its own, to justify a finding of predominance. *McLaughlin v. American Tobacco Co.* (2d Cir. 2008) 522 F.2d 215, 223: "But proof of misrepresentation – even widespread and uniform misrepresentation – only satisfies half the equation; the other half, reliance on the misrepresentation, cannot be subject to general proof." Accordingly, reconciling the different states' laws regarding reliance within misrepresentation defeats predominance. *See, In re Grand Theft Auto Video Game Consumer Litigation* (S.D.N.Y. 2008) 251 F.R.D. 139, at 146, 154-55.

## 2. Eligibility to Maintain Class Actions.

Even the ability to be a class member is destroyed when referring to each state's requirements for consumer fraud actions. *In re Grand Theft Auto Video Game Consumer Litigation* (S.D.N.Y. 2008) 251 F.R.D. 139, at 160-61. Some settlement class members are barred from participating in any consumer fraud class action, including this one. *See, e.g.,* Ala. Code §8-19-10(f); Ga. Code Ann. §10-1-399(a); La. Rev. Stat. Ann. §51:1409(A); Miss. Code Ann. §75-24-15(4). In *Arnold v. Microsoft Corp.* (Ky.Cir.Ct. 2000) 2001 WL 193765, the court held that the relevant Kentucky consumer fraud provision does not permit a class action suit. In other states, class members must notify the state attorney general. Kan. Stat. Ann. §50-634(g); Mo. Ann. Stat. 407.025(7); N.J Stat. Ann. §56:8-20. *Accord,* Oregon, Washington. In the present case, it does not appear that any attorneys general have been notified. In some states, the class members must notify the defendant of the imminence or pendency of an action for consumer fraud. *See,* Ala. Code §8-19-10(e); Alaska Stat. Ann. §45.50.535(b)(1); Cal. Civ. Code §1782(a)(1). *Accord,* Georgia, Indiana, Maine, Massachusetts, Texas, and Wyoming.

Noncompliance with some of these states' notice requirements may bar certain settlement members' claims, as was the case in *In re Pharm. Indus. Average Wholesale Price Litigation*, 230 F.R.D. at 84-85 (refusing to certify consumer fraud class action as to those individuals whose claims arise under states with notice requirements).

### 3. Scienter of Defendants.

Several states do not require a showing of scienter in the consumer fraud arena, such as New York and Texas. *Small v. Lorillard Tobacco Co.* (N.Y. 1999) 94 N.Y.2d 43; *Kessler v. Fanning* (Tex. App. 1997) 953 S.W.2d 515, 521. Some states, however, require proof of intent, such as Colorado, Nevada, Kansas, and Alabama. Colo. Rev. Stat. Ann. §6-1-105(l)(u); Nev. Rev. Stat. Ann. §598.0979(l); *Dodson v. U-Needa Self Storage, LLC* (2004) 32 Kan.App.2d 1213; *Sam v. Beaird* (Ala.Civ.App. 1996) 685 So.2d 742, 744. *See, In re Grand Theft Auto Video Game Consumer Litigation* (S.D.N.Y. 2008) 251 F.R.D. 139, at160.

## III.  THE PREDOMINANCE INQUIRY IS PARAMOUNT, EVEN WHEN A SETTLEMENT IS PENDING

Objectors have illustrated three divergent issues which destroy the predominance inquiry under Rule 23. Judge Wohl Kram discussed the importance of this issue:

> The predominance inquiry, however, "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement. *Amchem Products,* 521 U.S. at 623. Accordingly, the Settlement does not relieve the Court of its duty to perform a robust analysis of the plaintiffs' predominance showing. *See, Amchem Prods.,* 521 U.S. at 620 (indicating that specifications of Rule 23 other than trial-manageability requirement "demand undiluted, even heightened, attention in the settlement context"); *Denney, supra,* 443 F.2d at 270 (strictures of Rule 23 should not be loosened because of settlement).

*In re Grand Theft Auto Video Game Consumer Litigation* (S.D.N.Y. 2008) 251 F.R.D. 139, at 156. Many courts have determined that differences in the underlying state laws applicable to individual putative class members' consumer-protections claims preclude a finding of predominance. *See, e.g., McLaughlin v. American Tobacco Co.* (2d Cir. 2008)

6

522 F.3d 215; *In re Zyprexa,* 2008 WL 2696916 at 138 (tentatively holding that differences in state consumer practice laws defeat predominance); *In re General Motors Corp. Dex-Cool Products Liability* (S.D.Ill. 2007) 241 F.R.D. 305, 315 (holding that differences in state warranty laws defeated predominance); *In re Ford Motor Co. Ignition Switch Prods.* (D.N.J. 2000) 194 F.R.D. 484, 489-91 (finding that differences in state consumer protection laws defeats predominance, even under proposed grouping of similar state laws).  In particular, the court in *Baker v. Family Credit Counseling Corp.* (E.D.Pa. 2006) 440 F.Supp.2d 392, stated that "When district courts have faced the problem of nationwide classes which seek to apply state consumer protection laws, those courts have refused to certify a class, in part because choice of law would require applying the consumer protection law of each class member's home state." 440 F.Supp.2d at 414.  Other courts have reached the same result.  *In re Pharmaceutical Ind. Average Wholesale Price Litigation* (D.Mass. 2008) 252 F.R.D. 83, 94; *S. States Police Benevolent Assn, Inc. v. First Choice Armor & Equip., Inc.* (D.Mass. 2007) 241 F.R.D. 85, 93 (consumer protections laws varied in eight states, precluding certification).

In the present situation, wide differences exist between jurisdictions.  Accordingly, the burden belongs to Class Counsel to conduct an extensive review of state law variances to demonstrate how grouping would work, as recommended by the Manual for Complex Litigation (Fourth), §22.634, p. 412 (2004).  This method has worked in cases such as *In re Relafen,* 221 F.R.D. at 265 and 289, which certification was granted in part and denied in part.  In that case, certain groups of states could be covered by class certification, and not others, depending on the claims, whether for antitrust and consumer protection, or for unjust enrichment.

## IV.   THE FEE REQUEST MUST BE ANALYZED UNDER STATE LAW

A review of the PACER docket sheet on the morning of November 8 reveals an absence of an application for attorneys' fees.  This absence runs contrary to the mandate of *In re Mercury Interactive Corp. Securities Litigation* (9th Cir. 2010) 618 F.3d 988, to be addressed *infra*.  Regardless, the necessity of applying individual state remedies under

7

consumer protection acts has a corresponding necessity to analyze the fee requests under each state's law.

First, the applicable law must be determined; it is not a nebulous or irrelevant consideration. This is not a case where federal common law developed mainly in federal securities cases should be applied to Class Counsel's fee application (which is presently absent). The next step is to apply the correct state's law.

Further, in cases of diversity jurisdiction, federal courts apply state substantive law to determine the method of calculating attorneys' fees. *Security Mutual Life Ins. Co. v. Contemporary Real Estate Assoc.* (3d Cir. 1992) 979 F.2d 329, 331-32; *Mangold v. California Public Utilities Comm'n* (9th Cir. 1995) 67 F.3d 1470, 1478; *Northern Heel Corp. v. Compo Indus.* (1st Cir. 1988) 851 F.2d 456, 475.

A proper analysis of class counsel's fee request would require consideration of the laws of all fifty states. This requirement may make this action unmanageable just as much as the need to apply the substantive laws of all fifty states to the claims themselves renders the action inappropriate for class treatment.

There is a strong argument that, when a court is confronted with the task of applying potentially fifty different state laws to a motion for attorneys' fees, the court should apply the law most protective of the clients, in this case the class members. In lieu of canvassing the laws of all fifty states, it might be assumed that no state offers greater protection to client in the area of class action fee awards than New Jersey. Under these circumstances, the court should apply New Jersey law in analyzing Class Counsel's fee request (once it is filed).

## V.    CLASS COUNSEL FAILED TO FILE THE FEE REQUEST PRIOR TO THE OBJECTION DEADLINE, AS REQUIRED BY RULE 23 AND *MERCURY*

In August, 2010, Judge Tashima filed his opinion in *In re Mercury Interactive Corp. Securities Litigation* (9th Cir. 2010) 618 F.3d 988. Judge Tashima states:

> A class member, or a party from whom payment is sought, may object to the motion [for attorneys' fees]. Fed. R. Civ. P. 23(h). The plain text of the rule requires that any class member be allowed an opportunity to object to the fee

"motion" itself, not merely to the preliminary notice that such a motion will be filed. . . . The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "in setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections."

618 F.3d at 993-94. Class Counsel has failed to file his fee application by the objection deadline. Counsel is therefore in violation of Rule 23(h), under *Mercury,* precluding Court approval of fees at this time, until objectors have had a sufficient time to review the fairness of the application.

Further, a blanket 25% request for fees, coming out of the common fund, requires at the very least a lodestar check to ensure its fairness. This has not been provided. The fee approval must be postponed until the class has an opportunity to evaluate the fee request.

## VI.   The Requested Fee Must Be Closely Analyzed and Equitably Awarded.

Objectors are unable to analyze the lodestar, calculate the requested multiplier or complete any comparative analysis of the actual fund available to the class and the requested fees.

The court should bifurcate the hearing on the final approval of the settlement and the hearing on the award of attorney fees until such time as all claims are received, reviewed and tabulated. Approving and distributing the attorney fees should be consistent with an attorney's duty to put a client's interest first. Once the Attorney Fee Applications have been filed, all class members should be given the opportunity to review the fee request by their attorneys. Any such fee applications and all supporting documents should be available to the class and the public on the settlement website. This objector requests and reserves the right to supplement his objection after review of the attorney fee application.

9

The California supreme Court held more than 25 years ago in *Serrano v. Priest*, (1997) 20 Cal.3d 25 that: "The starting point of every fee award . . . must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts. Recent cases confirm that the lodestar method is required in all cases, including those involving "unconventional common funds." See *Leallao v. Beneficial California, Inc.* (2000) 82 Cal. App. 4th 19, 37-39; *Dunk v. Ford Motor Co.* (1996) 48 Cal. App. 4th 1794, 1809-1811. *Lealco,* supra, at 1809; see also *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal. App. 4th 615, 622-624. Despite a contrary trend in the federal courts, California maintains its strict adherence to the lodestar approach. *Ketchum v. Moses* (2001) 24 Cal.4th 1122. As mentioned, state law should be applied in these consumer protection issues.

The Court should also carefully scrutinize the fees being requested by Class Counsel to assure the Court that there is a reasonable relationship between the amount requested and the work performed. Once a settlement in a Class Action has been agreed upon, defendants no longer have an incentive to negotiate vigorously concerning the attorneys' fees. Especially in a case like this where the Settlement Fund is the total amount that defendants will pay under the Settlement "for any purpose." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, MDL 1559 (W.D. Mo. April 20, 2004), aff'd on other grounds, 922 F.3d 922 (8th Cir. 2005) ("the Nextel case,")

Particularly where there is no evidence of the basis of the fee request, the Court assumes the position of a fiduciary for the Class when the question of Attorneys' fees arises. At that point, Counsel and the Class have differing goals. This is especially true, where, as here, there is no evidence of what the total benefit to the Class will be. Dozens of cases have confirmed and identified this fiduciary role. For example:

Before considering the proper methodology for awarding attorney's fees out of a common fund, the Court feels compelled to define its role in these

10

proceedings.  When an attorney makes a claim for fees from a common fund, his interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F. 3d  513, 516 (6th Cir. 1993).  This divergence of interests requires a court to assume a fiduciary role when reviewing a fee application because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." *In Re Copley Pharmaceutical*, Inc. 1 F. Supp. 2d 1407 (Wyoming, 1998).  (emphasis added.)

In *Wise v. Popoff*, et al. 835 F. Supp. 977, (E.D. Mich. 1993) the court describes the roles as follows:

An attorney's role changes once he files a fee petition.  No longer a fiduciary for his client he becomes nothing more complex than another claimant against the fund created for the client's benefit.  The court must, in turn, become "the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton v. General Motors Corp.*, 860 F 2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989).  A court should not "rubber stamp" fee applications *In re Cincinnati Gas & Electric Co. Securities Litigation*, 643 F. Supp. 148, 152 (S.D. Ohio 1986).  The fact that the settling defendant may agree with the fee application (or, as in this case, be persuaded to remain silent about it) is irrelevant to the Court's analysis because the defendant having already paid the settlement amount, has little interest in the portion of the fund that the class attorney is allowed to retain". (emphasis added.)

This Court, therefore, must act as a fiduciary for the Class and conduct an in-depth investigation of the basis for the requested fee. The Court should at least determine what the Lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested.  The Court should investigate not only the amount of time expended, but by whom it was expended. Was it by a partner, an associate or a contract attorney, and were the rates charged reasonable? Did one person

11

take or defend a deposition, or were many associates in attendance? All of these matters should be investigated to make sure that the Class is not being overcharged.

Finally, because there is no information provided regarding how much of the $7 million left for the class will be distributed, the Court should withhold approximately 20% of the fee requested until it can be determined, after administration and cy pres distribution, the true value of the services provided.

## VII. THERE IS INSUFFICIENT INFORMATION REGARDING THE ADEQUACY OF THE REMEDY

The Request for Approval, and accompanying Settlement, provide no information regarding the value of the settlement. There is a blanket statement in the complaint that the damages exceed $5 million, with no explanation of how that figure was reached, nor any information regarding the potential size of the class. Given the potential size of the class, the time frame over which the conduct occurred, and the money received by Citibank as a result of this conduct, there is insufficient information provided to the class to make any assessment on whether the settlement sum is fair and reasonable. Under Rule 23, the Court cannot make the determination that $10 million is fair, adequate, and reasonable until information regarding class size, perceived damages, and value of the settlement is provided.

## VIII. THE CY PRES DISTRIBUTION IS ARBITRARY AND UNFAIR

When the court seeks to approve a proposed *cy pres* distribution, the court should determine whether the proposed distribution was useful in fulfilling the purposes of the underlying cause of action. *State of California v. Levi Strauss & Co.*, (1986) 41 Cal 3d. 460, 472. Although the trial court has no duty to compare alternative *cy pres* distributions in assessing the fairness of the settlement agreement, the trial court may consider whether another distribution would be more useful in fulfilling this purpose, particularly when an alternate distribution is proposed by a class member objecting to the settlement agreement. *In re Microsoft I-V Cases*, (2006) 135 Cal. App. 4th 706, 724.

12

This objector proposes that an alternative distribution that would be more useful in fulfilling the purpose of the underlying lawsuit.

In 2008 the court in *Cundiff v. Verizon California, Inc.*, (1st Dist., 2008) 167 Cal.App.4th 718 observed the following:

> "*Cy près* derives from the Norman *French cy près comme possible*, literally, 'as near as possible.' " (*Microsoft I-V*, supra, 135 Cal.App.4that p. 716, fn. 8.) " 'Where compliance with the literal terms of a charitable trust became impossible, the funds would be put to the "next best use," in accord with the dominant charitable purposes of the donor. [Citation.]' . . . 'The theory underlying fluid class recovery is that since each class member cannot be compensated exactly for the damage he or she suffered, the best alternative is to pay damages in a way that benefits as many of the class members as possible and in the approximate proportion that each member has been damaged, even though, most probably, some injured class members will receive no compensation and some people not in the class will benefit from the distribution . . . .' [Citation.]" (*In re Vitamin Cases*, supra, 107 Cal.App.4th at p. 826.) *Id.* at 729.

Class Counsel provides no explanation as to how this distribution could fulfill the purpose underlying the cause of action or how it bestows any direct or indirect benefit on the class.

The *Levi Strauss* case is very instructive on the principals of *cy* pres:

> The principal methods include a rollback of the defendant's prices, escheat to a governmental body for either specified or general purposes, establishment of a consumer trust fund, and claimant fund sharing. All of these methods promote the policies of disgorgement and deterrence by ensuring that the residue of the recovery does not revert to the wrong-doer. *State of California v. Levi Strauss & Co.*, (1986) 41 Cal 3d. 460, 473.

To determine a fair alternate *cy pres* distribution, it is helpful to look at the steps the court takes in deciding which method of fluid recovery is proper. When the court assesses the fairness of the distribution of residual funds using fluid recovery, the propriety of the method used is determined by its usefulness in fulfilling the underlying purpose of the litigation. *Bruno v. Superior Court,* (Ct. App. 1980) 179 Cal Rptr. 342, 347. Similarly, to approve the settlement agreement the court must make the same

13

determination, that the fluid recovery method chosen is useful in fulfilling the underlying purpose of the litigation. *State of California v. Levi Strauss & Co.*, (Cal. 1986) 41 Cal 3d. 460, 472. Therefore, the factors that guide the court's unilateral decision in determining when this underlying purpose is fulfilled are instructive.

Factors the court considers are: (1) the amount of compensation provided to class members, including non-claiming (or "silent") members; (2) the proportion of class members sharing in the recovery; (3) the extent to which benefits will "spill over" to non-class members and the degree to which the spillover benefits will effectuate the purposes of the underlying substantive law; and (4) the costs of administration. *Id* at 473.

"The theory underlying fluid class recovery is that since each class member cannot be compensated exactly for the damage he or she suffered, the best alternative is to pay damages in a way that benefits as many of the class members as possible and in the approximate proportion that each member has been damaged, even though, most probably, some injured class members will receive no compensation and some people not in the class will benefit from the distribution…" *Bruno v. Superior Court,* (Ct. App. 1980) 179 Cal Rptr. 342, 343. As proposed, the distribution agreement is silent on this issue and any indirect benefit is speculative at best.

In light of Class Counsel's deficiencies in demonstrating how the proposed distribution will be useful in fulfilling the purposes of the underlying cause of action, this Objector respectfully requests the court to 1) direct a distribution to include more appropriate recipients, or 2) direct further briefing on this issue and set a hearing on the *cy pres* distribution and require both parties to further brief the issue. The court should consider setting the hearing for a date after a tabulation of all or most claims, so that all parties will know if indeed there is any *cy pres* distribution to be made.

## IX. JOINDER IN OTHER OBJECTIONS

This Objector adopts and joins in all other well taken - bona fide objections filed by other Class Members in this case, and incorporates them by reference as if they appeared in full herein.

14

# X. CONCLUSION

The weight of authority compels rejection of class certification because there is no predominence. Nonetheless, if the Court is subsequently presented with comprehensive comparative analysis by the settling parties, and can determine that the various statutes can all be accommodated, then subclasses must be created with customized relief to recognize the differences. Class Counsel should be compelled to produce evidence of the value of the settlement, the size of the class, the percentage of the class estimated to be reached, and the estimate of the percentage of class members who will participate in the settlement. The attorneys' fee application must be analyzed under applicable state law.

WHEREFORE, this Objector respectfully requests that this Court:

A.    Upon proper hearing, sustain these Objections;

B.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement; and

C.    Award an incentive fee to this Objector for his service in this litigation.

D.    Award attorney fees to Objector's counsel.

Law Offices of Darrell Palmer

Dated:   November 8, 2010

By: _____

Darrell Palmer, Attorney for Objectors

15

**Hoffman v. Citibank (South Dakota)**
**Case No. 06-cv-571-AJG (MLGx)**

**DECLARATION OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

I, Maria V. Carapia, declare as follows:

I am employed with the Law Offices of Darrell Palmer whose address is 603 N. Hwy 101, Suite A, Solana Beach, California 92075. I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen (18) and I am not a party to this action.

On November 8, 2010, I caused to be served the following:

**OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT**

on the interested parties:

**SEE ATTACHED SERVICE LIST**

\_\_\_\_  by placing a copy in an envelope addressed to the addressee as indicated above and personally serving on this day.

\_\_\_\_  by sending a .pdf document via electronic mail to the email addresses listed for each addressee listed.

\_\_\_\_  by sending a copy via overnight mail. Airbill No.

\_X\_  by placing a copy in an envelope, with postage fully prepaid, for the addressee named above for collection and mailing on the above indicated day following the ordinary business practices of our offices

\_X\_  by sending a copy via facsimile transmission to the facsimile number(s) indicated above. The facsimile machine I used complied with California Rules of Court, Rule 2003, and no error was reported by machine.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 8, 1010, at Solana Beach, California.

Maria V. Carapia

DECLARATION OF SERVICE

1

## SERVICE LIST

2

3  Barry L. Kramer                          Class Counsel
   Law Offices of Barry L. Kramer
4  12428 Promontory Road
   Los Angeles, CA 90049
5  Phone: (310) 440-9761
   Fax: (310) 440-9761
6  Email: kramerlaw@aol.com

7  Julia B. Strickland                      Counsel for CitiBank
   Stroock & Stroock & Lavan, LLP
8  2029 Century Park East, 16th Floor
   Los Angeles, CA 90067
9  Phone: (310) 556-5800
   Fax: (310) 556-5959
10 Email: jstrickland@stroock.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28