1  Barry L. Kramer,  Bar No. 61772
   *kramerlaw@aol.com*
2  Law Offices of Barry L. Kramer
   12428 Promontory Road
3  Los Angeles, California 90049
   Telephone: (310) 440-9761
4
5  Attorneys for Plaintiff Laura Hoffman
6
7
8              **UNITED STATES DISTRICT COURT**
9      **CENTRAL DISTRICT OF CALIFORNIA -- SOUTHERN DIVISION**

10 LAURA HOFFMAN, an individual, on )   Case No. SACV-06-571-AJG(MLGx)
   behalf of herself and all others )
11 similarly situated,              )   **CLASS ACTION**
                                    )
12                    Plaintiff,    )   **NOTICE OF MOTION AND
                                    )   MOTION FOR FINAL APPROVAL
13 vs.                              )   OF SETTLEMENT;
                                    )   MEMORANDUM OF POINTS AND
14 CITIBANK (SOUTH DAKOTA),         )   AUTHORITIES**
   N.A., and DOES 1 through 10,     )
15 inclusive,                       )   Date: December 13, 2010
                                    )   Time: 10:00 a.m.
16                   Defendants.    )   Ctrm: 10D
                                    )
17 _____ )   Assigned to the Honorable Andrew J.
                                        Guilford, Courtroom 10D
18
19                                      Action Filed:    May 5, 2006
                                        Trial Date:      Not set
20 **TO DEFENDANT CITIBANK (South Dakota), N.A. AND TO ITS**

21 **ATTORNEYS OF RECORD:**

22        **PLEASE TAKE NOTICE** that on December 13, 2010, at 10:00 a.m., in

23 Courtroom 10D of the above-referenced Court, located at 411 West Fourth Street,

24 Santa Ana, California 92701-4516, Plaintiff in the above-captioned action, on

25 behalf of herself and all others similarly situated, shall seek an order from this

26 Court:

27        1.  Finally approving the settlement agreement with Citibank (South

28 Dakota), N.A. (hereinafter, "Citibank") as fair, reasonable and adequate and in the

1  best interests of the Settlement Class;

2      2.  Finding that the Class Notice as given was the best notice practicable

3  under the circumstances, is due and sufficient notice to the Settlement Class and

4  fully satisfies the requirements of due process and Federal Rule of Civil Procedure

5  23;

6      3.  Approving the plan of distribution of the settlement relief;

7      4.  Finally certifying the following class (hereinafter referred to as the

8  "Settlement Class") for settlement purposes only:

9      "All customers who, between May 5, 2002 and May 24, 2010, had a

10      credit card account with Citibank (South Dakota), N.A. or its

11      predecessor Citibank USA, National Association, and who paid

12      periodic finance charges that were assessed from the beginning of a

13      billing period in which the periodic rate was increased as a result of a

14      default or delinquency that occurred before August 20, 2009";

15      In the event that the Settlement Agreement does not become effective in

16  accordance with its terms, this certification shall automatically be terminated;

17      5.  Confirming that Plaintiff and the Settlement Class Members (except

18  those who have obtained proper and timely exclusion from the Settlement Class)

19  have released all Released Claims and are permanently barred and enjoined from

20  asserting, commencing, prosecuting or continuing any of the Released Claims

21  against the Released Parties; and

22      6.  Dismissing the Action with prejudice, subject to the Court's retaining

23  jurisdiction over the enforcement of the terms of this Agreement.

24      This motion is based upon this notice, the memorandum of points and

25  authorities and declaration of Barry L. Kramer served and filed herewith, the files

26  and records of this proceeding, and such oral and documentary evidence as may be

27  submitted to the Court before or at the hearing of this matter.

28      This motion is made following the conference of counsel pursuant to Local

ii

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

1 Rule 7-3, which took place on November 19, 2010, during which Defendant

2 indicated it will not oppose the substance of Plaintiff's Motion.

3

4 DATED: November 22, 2010                    Respectfully Submitted,

5                                             Law Offices of Barry L. Kramer

6                                             /S/ - Barry L. Kramer
                                              Attorneys for Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -v-

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL BACKGROUND   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. THE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     1.   Allegations Against Defendant Citibank  . . . . . . . . . . . . . . . . 5
     2.   Defendant Citibank's Position  . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  THE SETTLEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     1.   Cash Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     2.   Claims Process  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     3.   Cy Pres Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     4.   Settlement Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     5.   Attorneys' Fees and Incentive Award  . . . . . . . . . . . . . . . . . 10
     6.   Claims Administration  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     7.   Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          Summary Statement Notice  . . . . . . . . . . . . . . . . . . . . . . . . . 11
          Publication Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          Internet Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     8.   Opt-outs and Objections  . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          The Court's Order of November 16, 2010 . . . . . . . . . . . . . . 12
     9.   Final Approval Hearing  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.   ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     A.   Proper Notice Has Been Given to Settlement Class Members. . . . 13
     B.   The Settlement Is Fair, Reasonable and Adequate.  . . . . . . . . . . . 15
          1.   The complexity, expense and likely duration of the
               litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.   The reaction of class members to the settlement . . . . . . . 18
          3.   The stage of the litigation and the extent of discovery
               completed  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          4.   The risks of establishing liability and damages, and the
               range of the reasonableness of the settlement to a
               possible recovery in light of the risks of litigation  . . . . . . . 19
          5.   The risk of maintaining class action status through trial . . . . 22
          6.   The range of the reasonableness of the settlement in light
               of the best possible recovery  . . . . . . . . . . . . . . . . . . . . . . 22
          7.   Views of experienced counsel  . . . . . . . . . . . . . . . . . . . . 23
          8.   Arms' length negotiation  . . . . . . . . . . . . . . . . . . . . . . . . 24

VI.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

iv

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

# TABLE OF AUTHORITIES

**Cases:**

Armstrong v. Bd. of School Directors, 616 F.2d 305 (7th Cir. 1980) . . . . . . 16, 19

City of Detroit v. Grinnell Corporation, 495 F.2d 448 (2d Cir. 1974) . . . . . . . . . 17

Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir. 1991) . . . . . . . . . . . . . 16

Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Discover Bank v. Superior Court, 36 Cal. 4th 148 (Cal. 2005) . . . . . . . . . . . . . . 4

EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884 (7th Cir. 1985) . . . . . . . . . . 19

Eisen v Carlisle & Jacquelin, 417 U.S. 156, 176 (1974) . . . . . . . . . . . . . . . . . . 15

Evans v. Chase Bank USA, N.A., 267 Fed. Appx. 692 (9th Cir. 2008) . . . . . 20, 24

Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) . . . . . . . . . . . . . 15

In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Combustion, Inc., 968 F. Supp. 1116 (W.D. La. 1997) . . . . . . . . . . . . . . . . 19

In re Franklin Nat'l Bank Sec. Litig., 574 F.2d 662, 669-70, modified on other grounds, 559 F.2d 1109 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002 (N.D. Ill. 2000) . . . 17

In re Nasdaq Market-Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In re Oracle Securities Litigation, 829 F. Supp. 1176 (N.D. Cal. 1993) . 17, 19, 23

In re U.S. Oil and Gas Litigation, 967 F.2d 489 (11th Cir. 1992) . . . . . . . . . . . 17

in Re: Mercury Interactive Corp. Securities Litigation, 618 F.3d 988 (9th Cir., 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

Jones v. Amalgamated Warbasse Houses, Inc., 97 F.R.D. 355 (E.D.N.Y. 1982), aff'd, 721 F.2d 881 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

Marisol A. v. Guliani, 185 F.R.D.152 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . 18

Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co., 834 F.2d 677 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

McCoy v. Chase Manhattan Bank, USA, N.A., 559 F.3d 963 (9th Cir. 2009, review granted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20, 24

Officers for Justice v. Civil Service Commission of City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . 16, 19

Patterson v. Stovall, 528 F.2d 108 (7th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . 19

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985) . . . . . . . . . . . . . . 15

Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999), aff'd, 206 F.3d 1212 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Shaner v. Chase Bank USA, N.A., 587 F.3d 488 (1st Cir. Mass. 2009) . . . . 20, 24

Swanson v. Bank of Am., N.A., 559 F.3d 653 (7th Cir. Ill., 2009) . . . . . . . . 20, 24

Van Bronkhorst v. Safeco Corp., 529 F.2d 943 (9th Cir. 1976) . . . . . . . . . . . . . 16

Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . 15

Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910) . . . . . . . . . . . . . . . . . . . 15

**Statutes:**

15 U.S.C. § 1640(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

28 U.S.C. § 1332(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Rules:**

12 C.F.R. part 226 Supp. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

12 C.F.R. § 226.9(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 21

Federal Rule of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 13, 14

Federal Rule of Civil Procedure 23(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure Rule 23(c)(2)(B)  . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Civil Procedure Rule 23(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Other Authorities:**

4 NEWBERG ON CLASS ACTIONS, § 11.41 (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . 25

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Laura Hoffman ("Representative Plaintiff" or "Plaintiff") and the Law Offices of Barry L. Kramer ("Class Counsel"), on behalf of the Settlement Class, respectfully request that this Court: (i) finally approve the proposed settlement with defendant Citibank (South Dakota), N.A. ("Citibank" or "Defendant") as fair, reasonable and adequate, (ii) issue a final judgment and dismiss this action with prejudice, and (iii) retain jurisdiction over the enforcement and implementation of the settlement.  The parties and their counsel all believe the Settlement Agreement to be fair, reasonable, and adequate, and in the best interest of the settlement class.  (A copy of the Settlement Agreement with Citibank was attached as Exhibit 1 to the Declaration of Barry L. Kramer in support of Plaintiff's motion for preliminary approval of the settlement (Docket # 61-1).)

On May 24, 2010, this Court entered its Order preliminarily approving the Settlement Agreement as fair, reasonable and adequate and within the range of possible approval.  The Court found that the Settlement Agreement resulted from extensive arms' length negotiations and that it was sufficient to warrant notice thereof to Settlement Class Members and a full hearing on the approval of the Settlement.  The Court conditionally certified the following Settlement Class under Federal Rule of Civil Procedure 23(c) for settlement purposes only:

> All customers who, between May 5, 2002 and May 24, 2010, had a credit card account with Citibank (South Dakota), N.A. or its predecessor Citibank USA, National Association, and who paid periodic finance charges that were assessed from the beginning of a billing period in which the periodic rate was increased as a result of a default or delinquency that occurred before August 20, 2009,

finding preliminarily that it met the Rule 23 requirements (of numerosity, commonality, typicality, adequacy of representation, predominance of common

1

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

1  questions and superiority of the class action device[1]), and ordered notice to be

2  given to the Class in the manner set forth in the Settlement Agreement.

3    As set forth in more detail below, Notice has been given to the Settlement

4  Class in accordance with the plan approved by the Court.  The Notice informed the

5  members of the Settlement Class of the terms of the settlement, the maximum

6  amount of costs and attorneys' fees Class Counsel will seek to recover, and the

7  procedure for submitting comments regarding approval of, or objection to, the

8  settlement.  Of the millions of class members who received notice, only four

9  objections have been filed or otherwise received by Class Counsel to date, and

10  only 140 cardholders have chosen to opt out of the Settlement Class.[2]  Class

11  Counsel has received numerous e-mails and letters supporting the settlement

12  and/or thanking Class Counsel on the settlement.  The small number of opt outs

13  and objections from millions of cardmembers speaks directly about the fairness,

14  adequacy and reasonableness of the settlement.  (See Declaration of Barry L.

15  Kramer ("Kramer"), ¶ 15.)  Class Counsel has also responded to hundreds of e-

16  mails, telephone calls and letters from Settlement Class members requesting

17  additional information, and continues to do so.

18  ## II. **PROCEDURAL BACKGROUND**

19    On May 5, 2006, Plaintiff Laura Hoffman brought this case in Orange

20  County Superior Court as a class action on behalf of herself and a class of

21  similarly situated California consumers, alleging that Citibank's practice of

22  retroactively increasing consumers' interest rates without warning or advance

23  notice, thus creating additional lump sum finance charges, was unfair and

24  deceptive and a violation of California's consumer protection laws.  Citibank

25  subsequently removed the case to this Court, which, upon Plaintiff's motion to

26

27   [1]  These issues were briefed in connection with Plaintiff's Motion for Preliminary
Approval of Settlement, so they will not be reiterated here.

28

 [2]  The deadline to opt out of the settlement was November 8, 2010.

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

remand, held that it had jurisdiction under 28 U.S.C. § 1332(d)(2).  Thereafter, Plaintiff filed a First Amended Complaint, and Citibank moved to compel individual, binding arbitration under the terms of Plaintiff's Cardmember Agreement which provided for such arbitration and included a class action waiver. The Court granted Citibank's motion on November 22, 2006, in what it indicated was a "close call."  Thereafter, Plaintiff moved this Court to certify the question as to whether it should have ordered the Plaintiff to individual, binding arbitration, and the Court granted Plaintiff's motion, certifying the case for appeal.  After Plaintiff received permission from the Appellate Court to file an appeal, and extensive briefing before the Ninth Circuit, the Appellate Court reversed the order compelling arbitration and remanded the case back to this Court for further proceedings in accordance with its ruling.  Thus, in October 2008, the case was remanded for the purpose of conducting discovery related to the propriety of Citibank's class action waiver.  Thereafter, Plaintiff began a course of extensive discovery to Citibank, as authorized by this Court.

During the course of disputes that arose over various discovery matters, and commencing in August 2009, the parties entered into extensive settlement negotiations, which eventually resulted in a Settlement Agreement which was finalized in April of 2010.  As a result of the settlement, the issue of the enforceability of Citibank's arbitration clause has not been finally decided following remand.  After the Settlement Agreement was finalized in April of 2010, this Court preliminarily approved the Settlement pursuant to noticed motion on May 24, 2010.  In conjunction therewith, Plaintiff filed her Second Amended Complaint ("SAC", Docket #60-2) which asserts additional claims for violation of Federal Truth-in-Lending Regulation 12 C.F.R. § 226.9(c) and for statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(B), as well as claims under the consumer protection laws of all 50 States and the District of Columbia, on behalf of the Settlement Class defined above.

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

The classwide settlement was reached after intense, extensive negotiations between Citibank's counsel, David W. Moon and Julia B. Strickland of Stroock & Stroock & Lavan, LLP, and Plaintiff's counsel Barry L. Kramer in order to resolve all claims relating to or arising from this action on a nationwide basis.  As more fully set forth below, this settlement was vigorously negotiated through extensive arms-length negotiation and through numerous conversations, in-person and telephonic meetings, and informational exchanges to discuss resolving this action, and a formal mediation conducted with Martin Quinn of JAMS.  (Kramer, ¶ 7.)  The terms of the settlement are contained in the Settlement Agreement which was filed as Exhibit 1 to the Declaration of Barry L. Kramer in Support of Motion for Preliminary Approval of Settlement (Docket # 61-1).  As set forth therein, the settlement provides for a Settlement Amount of $10,000,000.00, and will fully, finally and forever discharge and settle the claims against Defendant Citibank.  The amount of the settlement takes into account the several major pitfalls which could prove difficult or impossible to overcome.

Class Counsel, who is experienced in class action litigation and who has been approved as Class Counsel in numerous federal and state class actions including over a dozen settled cases against credit card lenders, has spent a considerable amount of time and effort in litigating this case, and has extensive, specialized knowledge developed over an extended period of time involving the key issues which have a major impact on proceedings in this case.  In particular, Class Counsel herein was lead counsel in the leading California Supreme Court case on the arbitration issue, Discover Bank v. Superior Court, 36 Cal. 4th 148 (Cal. 2005).  Additionally, he is also counsel for Plaintiff James McCoy in the pending U.S. Supreme Court case regarding the propriety of retroactive, default-based rate increases, and has been extensively involved in litigation involving credit card issuers and credit card problems for the last ten years.  (Kramer, ¶ 3.)  This specialized experience is totally unique, and was instrumental in achieving

4

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

the settlement herein, which creates a $10,000,000 fund (all of which will be paid out by Citibank) despite the fact that even the Federal Reserve Board, which wrote the Truth in Lending regulation at issue, has directly refuted the position of Plaintiff herein in the *McCoy* case.  In light of all the factors influencing this case, and based on Class Counsel's reasoned judgment and extensive experience, he believes this comprehensive settlement is in the best interests of the Settlement Class, and now seeks final approval of the settlement pursuant to Federal Rule of Civil Procedure 23 after over four years of litigation. (Kramer, ¶ 4.)

In accordance with the Settlement Agreement, Plaintiff now seeks entry of the Proposed Settlement Order and Final Judgment (Exhibit E to the Settlement) submitted herewith, which contains the provisions listed in the above Notice of Motion.  Defendant's counsel have represented that they will not oppose the substance of this Motion.  (Kramer, ¶ 2.)

## III.   THE LITIGATION

### 1.   Allegations Against Defendant Citibank

In this case, Plaintiff alleges that the Settlement Class suffered damages because of Citibank's alleged practice of retroactively increasing interest rates when a credit card customer was delinquent or in default on his or her account. Specifically, Plaintiff alleges that Citibank, during the class period, reviewed its delinquent credit card accounts during its end-of-billing-cycle review process, targeted selected cardholders for rate increases as a result of such review, and then backdated these rate increases to the start of the customer's billing cycle (see SAC, ¶ 3).  Plaintiff alleges that this practice violated the Federal Truth-in-Lending regulations then in effect, specifically 12 C.F.R. § 226.9(c) which required notice of a rate increase to be given before the date the increase would take effect, and further alleges that the retroactive rate increases caused sudden, additional finance charges which constituted an illegal penalty and an unfair business practice in violation of applicable consumer protection laws (SAC, ¶¶ 4-8).

5

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

1  **2.   Defendant Citibank's Position**

2      Defendant Citibank vigorously denies any wrongdoing or liability of any

3  kind and has asserted numerous defenses, as to liability and the amount of

4  damages.  Furthermore, and critically, as it relates to consideration of this

5  settlement, a number of Federal District and Appellate Courts have rejected claims

6  substantially identical to those raised in this action, and indeed the Federal

7  Reserve Board has specifically refuted the position taken by Plaintiff as to the

8  correct interpretation of the Board's Regulation at issue herein.  Additionally, the

9  question presented here of whether these increases violated the former 12 C.F.R. §

10  226.9(c), in effect at the time, is the central issue in a proceeding currently

11  pending before the U.S. Supreme Court.  (<u>Chase Bank USA, N.A. v. McCoy</u>, case

12  no. 09-329, in which oral argument is set for hearing on December 8, 2010.)

13  (Kramer, ¶ 19.)  Defendant further contends that it has the right to compel

14  arbitration of the class claims and that a nationwide class could not be certified,

15  and these issues would have to be fully litigated in advance of any determination

16  on the merits in this action.  Nevertheless, despite the various possibilities which

17  could result in a victory for Defendant in this action, Defendant has entered into

18  the Settlement Agreement providing for a $10,000,000 common fund in order to

19  avoid the expense, inconvenience, and inherent risk of litigation, as well as the

20  concomitant interruption of its business operations.

21  **IV.   THE SETTLEMENT**

22      The Settlement Agreement represents a successful resolution of complex

23  claims against the Defendant, which was achieved only after Plaintiff's counsel

24  undertook considerable efforts, including a lengthy history of similar, albeit

25  unsuccessful actions against Citibank.  Among other things, Class Counsel[3], over a

26  period of more than four years: researched, analyzed and compiled a

27  

28  [3]  Strange & Carpenter was previously associated as co-counsel for Plaintiff and
assisted in this work, but withdrew in 2008 while this case was on appeal.

6

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

comprehensive complaint and analysis of potential class damages; opposed the removal of the action to federal court and made a motion to remand; opposed a motion to compel arbitration; researched the law on each cause of action; sought and obtained permission to file an interlocutory appeal of the arbitration issue after the Court's ruling to compel binding, individual arbitration; filed, briefed, and successfully prosecuted an appeal, resulting in a published opinion; initiated and conducted extensive discovery into the arbitration issue; prepared and filed two amended complaints; made numerous strategic and tactical decisions in conjunction with rapid and ongoing changes in the law; successfully negotiated this favorable settlement for the Class after participating in arms' length settlement negotiations; responded to hundreds of inquiries; sought and obtained Preliminary Approval of the Settlement; monitored the notice process; sought and obtained a modification of the Preliminary Approval in order to comply with the Ninth's Circuit recent ruling in in Re: Mercury Interactive Corp. Securities Litigation, 618 F.3d 988; and is seeking Final Approval of the Settlement. (Kramer, ¶ 6.)

Class Counsel, who is experienced in both deceptive trade practices and class action law, believes the settlement is fair and reasonable to the Settlement Class. (Kramer, ¶ 22.) Although Plaintiff believes she has a strong case, Defendant disagrees. Therefore, the issue of liability would be intensely litigated, as would class certification. Years of litigation, including appeals, would involve uncertainty and potentially result in no payment to the Class. Moreover, Class Counsel believes that this settlement is particularly fair given the risks that the Settlement Class members could be forced to individually arbitrate their claims, that deference could be granted to the Federal Reserve's Board position on the operative regulations, that the appeal before the U.S. Supreme Court could go against Plaintiff, that a class might not be certified, etc. For these reasons, Class Counsel submits that a $10 million settlement, with no reversion to Defendant, is in the Class's best interest. (See Kramer, ¶ 24.)

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

The terms of the Settlement Agreement preliminarily approved by the Court are summarized as follows:

### 1.   Cash Payment

Citibank has agreed to pay a total Settlement Amount of ten million dollars[4] which will be paid in full regardless of the number of Claim Forms received and shall include payment of Settlement Costs (including any Incentive Award and Attorney's Fees granted by the Court), payments to Eligible Settlement Class Members and the Cy Pres Fund.  No interest will accrue on these amounts (unless an appeal is taken from the Final Judgment).  The Settlement Amount will be reduced by the Settlement Costs prior to determining and paying any amounts to Eligible Settlement Class Members.  After making this reduction, the Net Settlement Amount, estimated to be in the neighborhood of $7,000,000, will be paid to Eligible Settlement Class Members on a claims-made basis, with any remaining funds going into a Cy Pres Fund.  Each account for which a valid claim is made will be eligible for a share of the Net Settlement Amount in the lesser amount of: (i) $18.00; or (ii) a pro rata share of the Net Settlement Amount, calculated by dividing the Net Settlement Amount by the number of valid claims.  Any portion of the Net Settlement Amount remaining after payment of valid claims will go into the Cy Pres Fund (which will also include any settlement checks that are not cashed within 120 days).  Based on the number of claim forms received to date, it is a virtual certainty that the Net Settlement Amount will prove more than adequate to pay all valid claims the full $18.00, and it is estimated that the Cy Pres Fund, which will be distributed to ten Cy Pres recipients, will be in the neighborhood of $7 million.  (Kramer, ¶ 12.)

### 2.   Claims Process

The Claim Form to be used was incorporated as Exhibit F to the Settlement

---

[4]   $500,000 of this amount is designated as statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(B).

Agreement[5], and the deadline for submitting claim forms is February 11, 2011.  As of November 17, 2010, approximately 11,000 forms had been received, but the final total of claims is expected to be somewhat higher, as many forms have been received that cover more than one account, and claims will continue to be received up to the deadline.  (Kramer, ¶ 12.)

### 3.   Cy Pres Fund

The Settlement Agreement provided that the remainder of the Settlement Amount, after paying claims-made awards to eligible Settlement Class members and Settlement Costs, constitutes the Cy Pres Fund, to be shared equally among 4 not-for-profit entities established for education or other charitable purposes.  The funds may not be used for advocacy or religious purposes.  Although final figures are not yet known, it now appears that the Cy Pres Fund will be in the neighbor-hood of $7 million.  Because of its anticipated size, the parties stipulated to amend the Settlement so that the this Fund will now be shared equally among 10 recip-ients: 5 nominated by Plaintiff and 5 by Defendant.  Pursuant to the Court's order of November 16, 2010, the parties will designate these recipients by December 10, 2010, and objectors will, of course, be entitled to object to any of the proposed Cy Pres recipients, or suggest alternate recipients for the Court's consideration.

### 4.   Settlement Costs

Notice costs (including costs for Publication Notice, Internet Notice and any

---

[5]  To be eligible for a share of the settlement, Class Members must submit a valid and timely Claim Form, giving their name, address and Citibank account number, and confirming under penalty of perjury that they held a Citibank account and paid finance charges following an increase of the interest rate on the account that they believed, to the best of their knowledge, was due to a delinquency or default under the terms of the agreement governing the account within the designated time frame, and did not receive a refund of the associated finance charges and/or a reduction in the interest rate. Accounts for which the finance charges were refunded or the interest rate was reduced following an increase due to a delinquency or default, or which were written or charged off by Citibank for any reason, are not eligible.  Claims are subject to verification by Citibank and only one valid claim per account will be honored.

1   additional notice ordered by the Court[6]) and settlement administration costs,

2   including, *inter alia*, the cost of mailing settlement payments (but not the amounts

3   of the payments themselves), the cost of printing and mailing notices and/or Claim

4   Forms specifically requested by class members and the cost of maintaining the

5   designated post office box for receiving Claim Forms and opt-out requests, will be

6   deducted from the Settlement Amount, as will any award of Class Counsel's

7   attorneys' fees and costs, and any incentive award to the named Plaintiff.

8       **5.    Attorneys' Fees and Incentive Award**

9       As part of the Settlement Costs, Class Counsel is requesting, and Citibank

10   has agreed not to object to, an award of attorneys' fees and costs in the amount of

11   $2,500,000.00, constituting 25% of the $10,000,000.00 cash value of the

12   settlement, as well as an incentive payment of $5,000.00 to the named Plaintiff,

13   Laura Hoffman.  These amounts are subject to approval by the Court, but such

14   approval is not a condition of the settlement.  Plaintiff's application for fees and

15   incentive payment is the subject of a motion that is being filed separately.

16       **6.    Claims Administration**

17       The settlement is being administered in house by Citibank.  To be

18   considered timely, Claim Forms must be mailed to a designated post office box no

19   later than February 11, 2011, and Citibank will have no obligation to honor any

20   Claim Forms postmarked after this date or sent to another address.  Thereafter,

21   Citibank has 120 days in which to verify or deny claim forms, and Class Counsel

22   has the right to dispute any claim's denial and to seek resolution by the Court of

23   any such disputes that cannot be resolved in good faith.  Thereafter, Citibank will

24   mail checks to each Eligible Settlement Class Member and the amounts of any

25   checks remaining uncashed after 120 days will be included in the Cy Pres Fund.

26       **7.    Notice**

27       Class Notice has been timely given by Citibank in the form and manner

28

---

[6]  No costs were incurred for solo mailing of Statement Notices.

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

approved by the Court, and Citibank will file declaration(s) to this effect with the Court by November 30, 2010.

**Summary Statement Notice:** Citibank has provided individual notice to all persons in the Settlement Class to whom Citibank mailed or delivered a periodic statement during one monthly billing cycle. The notice was accomplished by including a message on the statement in the form previously approved by the Court, directing recipients to the location of the Internet Notice and Claim Form.

**Publication Notice:** On Friday, August 27, 2010, Citibank published a summary notice of the settlement in the weekend national edition of USA Today. The Publication Notice was in the form previously approved by the Court and directed Settlement Class Members to the location of the Internet Notice and Claim Form.

**Internet Notice:** On or about July 29, 2010, Citibank established an Internet web site at http://www.casenosacv06571.com which has remained active since that date. The website publishes, and makes available for download, full-length, downloadable forms of the Settlement Agreement, Internet Notice and Claim Form as previously approved by the Court. The recent Stipulation and Court Order regarding scheduling have also been added to the website.

### 8. Opt-outs and Objections

The Settlement Agreement allowed Class members to opt out of the settlement by sending a written request to a designated address by November 8, 2010. As of November 17, 2010, a total of 140 such requests had been received, representing well below 0.01% of the estimated membership of the Settlement Class. (Kramer, ¶ 13.)

From the millions of class members sent notice of the settlement, a total of only four objections to the settlement have been received by Plaintiff's counsel: two filed objections, (one on behalf of C. Prada and Howard Strong, the other on

behalf of Joseph Balla, Andrew J. Cesare and Todd Bates), and two letter objections: one from Jonathan Corbett dated September 17, 2010, the other from Jeanine Mercer dated October 4, 2010.  In accordance with the Court's Order dated November 16, 2010, Plaintiff will respond to these objections in a separate filing by December 6, 2010.

**The Court's Order of November 16, 2010**

Subsequent to the Preliminary Approval by this court of the settlement herein, the Ninth Circuit Court of Appeals issued its opinion in <u>in Re: Mercury Interactive Corp. Securities Litigation</u>, 618 F.3d 988, holding that District Courts are now required to set the deadline for objections to attorneys' fees in class actions on a date after the fee motion has been filed, instead of the other way round, as was previously the schedule "commonly employed by district courts throughout the Ninth Circuit and elsewhere in the country."

The original schedule contained in the Court's preliminary approval order, issued prior to the holding in <u>Mercury Interactive</u>, provided that the deadline for making objections to the Fee Application would be November 8, 2010, and that the deadline for filing papers in response to objections to the Settlement Agreement and in support of the Fee Application would be November 30, 2010. However, in light of the potential problems that could arise under the original schedule, and pursuant to the Stipulation of Plaintiff and Defendant, the Court modified the original schedule, which now provides that Plaintiff's Fee Application and Motion for Final Approval of Settlement are due by November 22, 2010; that the parties shall each designate five (rather than two) proposed recipients of monies from the Cy Pres Fund by December 10, 2010, and the Settlement Agreement shall be deemed to be amended accordingly; that objections to any of the proposed Cy Pres designees may be presented at the Final Approval hearing or at such later date as designated by the Court; that the deadline for filing objections to Plaintiff's Fee Application shall be continued to November 30, 2010;

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

1  and that the deadline for filing responses to objections shall be continued to
2  December 6, 2010.  Copies of the parties' Stipulation and of the Order based
3  thereupon were posted on the settlement web site shortly after the Court's Order,
4  and the two objectors that had previously filed objections with the Court were both
5  served with notice of the changes, so as to allow them ample opportunity to further
6  object if they so desired.

7        **9.**    <u>**Final Approval Hearing**</u>

8       The Settlement Agreement provides that Plaintiff shall seek entry by the
9  Court of the Final Approval Order (attached thereto as Exhibit E), which includes
10 provisions that: (a) finally approve the settlement as fair, reasonable and adequate
11 and in the best interests of the Settlement Class; (b) find that the Class Notice as
12 given was the best notice practicable under the circumstances, is due and sufficient
13 notice to the Settlement Class and fully satisfies the requirements of due process
14 and Federal Rule of Civil Procedure 23; (c) approve the plan of distribution of the
15 settlement relief; (d) finally certify the Settlement Class; (e) confirm that Plaintiff
16 and the Settlement Class Members (except those who have obtained proper and
17 timely exclusion from the Settlement Class) have released all Released Claims and
18 are permanently barred and enjoined from asserting, commencing, prosecuting or
19 continuing any of the Released Claims against the Released Parties; and (f)
20 dismiss the Action with prejudice, subject to the Court's retaining jurisdiction over
21 the enforcement of the terms of this Agreement.

22      These provisions are included in the Proposed Settlement Order and Final
23 Judgment submitted concurrently, entry of which is sought by this motion.

24               **V.**  <u>**ARGUMENT**</u>

25 **A.**    <u>**Proper Notice Has Been Given to Settlement Class Members.**</u>

26      As will be set forth in declaration(s) to be filed by Citibank, class notice has
27 been given in accordance with the Court's Preliminary Approval Order.  The
28 Summary Statement Notice, directing recipients to the location of the Internet

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

Notice and Claim Form, was timely included on all periodic statements issued by Citibank during a monthly billing cycle, and the Publication Notice was printed in the August 27, 2010 Weekend National Edition of USA Today.  The Internet Notice approved by the Court had previously been posted and made available for download on the Internet at http://www.casenosacv06571.com, along with the Settlement Agreement and Claim Form.  Thus, the notice program approved by the Court in its Preliminary Approval Order entered on May 24, 2010, was timely completed within 120 days thereafter.

As the Court previously found in that Order, that was the best practicable notice under the circumstances and it was reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action and their right to object to or exclude themselves from the Settlement Class. The Court further found the class notice program to be reasonable, constituting due, adequate and sufficient notice to all persons entitled to receive notice, and meeting the requirements of due process and Federal Rule of Civil Procedure 23.

Thus the notice in this case, which afforded Settlement Class members an opportunity to opt-out and to object and appear at the Fairness Hearing, was the "best practicable notice under the circumstances," and therefore, satisfies the requirements of F.R.C.P. Rule 23[7], applicable case law, and due process.  The approved class notice fairly apprised "prospective class members of the class action's pendency, the relevant terms of the proposed settlement[s], and their

---

[7]   See F.R.C.P. Rule 23(c)(2)(B):

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

options in connection with [this] case." <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 70 (2d Cir. 1982).  The notice adequately described, among other things, the litigation posture of the Plaintiff and the settling Defendant, the settlement fund, the means of distribution to Settlement Class members, the request for the Representative Plaintiff's incentive award, and the application for attorneys' fees and expenses.  In addition, the notice advised the Settlement Class members as to what effect the settlement will have on the future legal rights of Settlement Class members.

Further, the notice was mailed or delivered to each Settlement Class member "who can be identified through reasonable effort." <u>Eisen v Carlisle & Jacquelin</u>, 417 U.S. 156, 176 (1974).  The Summary Statement Notices were included on all periodic statements issued by Citibank during a monthly billing cycle, which were mailed or electronically delivered to Settlement Class members at their current addresses as reflected in Citibank's computerized account records.  The use of bank and brokerage house records to compile lists for class action mailings is a procedure that has been approved by the Courts of Appeals.  <u>See, e.g.</u>, <u>In re Franklin Nat'l Bank Sec. Litig.</u>, 574 F.2d 662, 669-70, *modified on other grounds*, 559 F.2d 1109 (2d Cir. 1978).

Thus, the program of notice informed the Settlement Class members of the terms of the settlement, pursuant to F.R.C.P. Rule 23(e), and was the "best notice practicable," satisfying all of the requirements of F.R.C.P. Rule 23, applicable case law, and due process.  <u>See also</u> <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 811-12 (1985); <u>accord</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir. 1998).

**B.    <u>The Settlement Is Fair, Reasonable and Adequate.</u>**

No class action may be settled, compromised, or dismissed without court approval.  <u>See</u> F.R.C.P. 23(e).  It has long been held that "[c]ompromises of disputed claims are favored by the courts." <u>Williams v. First Nat'l Bank</u>, 216 U.S. 582, 595 (1910).  Moreover, the fact that "voluntary conciliation and settlement

are the preferred means of dispute resolution . . . is especially true in complex class action litigation."  Officers for Justice v. Civil Service Commission of City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)); see also Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1991) (noting that there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); Armstrong v. Bd. of School Directors, 616 F.2d 305, 313 (7th Cir. 1980) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."); Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 949 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").  Because the "[v]oluntary out of court settlement of disputes is 'highly favored in the law,'" the court should not "substitute its own judgment for the good faith negotiations of experienced counsel." In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740, 758-59 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987); Officers for Justice, supra, 688 F.2d. at 626 ("We are not to substitute our notions of fairness for those of the district judge and the parties to the agreement.")

       In determining whether a settlement is fair, reasonable, and adequate, the courts consider some or all of the following factors, among others: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of class members to the settlement; (3) the stage of the litigation and the extent of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risk of maintaining class action status through trial; (7)

defendant's ability to withstand a greater judgment;[8] (8) the range of the reasonableness of the settlement in light of the best possible recovery; and (9) the range of the reasonableness of the settlement to a possible recovery in light of the risks of litigation.  In re Oracle Securities Litigation, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993) (citing Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975) and City of Detroit v. Grinnell Corporation, 495 F.2d 448, 463 (2d Cir. 1974)).  However, these factors notwithstanding, the question of whether a proposed settlement is fair or reasonable is addressed to the court's broad discretion.  See In re U.S. Oil and Gas Litigation, 967 F.2d 489, 493 (11th Cir. 1992) ("Although class action settlements require court approval, such approval is committed to the sound discretion of the district court.").  Consideration of these factors, as well as the views of experienced counsel and the arms' length nature of the settlement negotiations (each of which is discussed below), establishes that the settlement in the instant action is fair, reasonable and adequate, and therefore, should be finally approved.

### 1.     *The complexity, expense and likely duration of the litigation*

Without a settlement in this case, the parties would continue to vigorously litigate many of the contested and novel issues of fact and law raised herein.  This case involves complex legal claims and defenses, the continuing litigation of which would require an enormous outlay of time, money and energy from the Court and the parties.  Specifically, continued litigation would necessarily require additional and expensive written discovery, depositions, and expert discovery, as well as significant motion practice.  Continued litigation would also likely result in further appeals and petitions to higher courts.  Finally, should the case go to trial, it would likely absorb many days of trial time and another lengthy appeal. These concerns weigh heavily in favor of approving the settlement.  See, e.g., In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000)

---

[8]   Because defendant could almost certainly withstand a greater judgment here, this factor does not support approval of the settlement and is not discussed below.

17

1  (noting that risk of further litigation is a significant factor in approving a

2  settlement).  (See Kramer, ¶ 25.)

3          **2.      *The reaction of class members to the settlement***

4          As set forth above, the deadline to file objections to the settlement has

5  passed, and only four objections have been received from the estimated millions of

6  Settlement Class members.  The overwhelmingly positive reaction of Settlement

7  Class members weighs heavily in favor of approval.  (Kramer, ¶ 15 .)  See Pigford

8  v. Glickman, 185 F.R.D. 82, 102 (D.D.C. 1999), aff'd, 206 F.3d 1212 (D.C. Cir.

9  2000) ("It is significant, however, that there are relatively few objections to the

10  settlement in comparison with the size of the class."); and Marisol A. v. Guliani,

11  185 F.R.D.152 (S.D.N.Y. 1999) ("The Court views the small number of comments

12  from a plaintiff class of over 100,000 children as evidence of the Settlement

13  Agreements' fairness, reasonableness, and adequacy.").  In fact, Class Counsel has

14  received numerous e-mails, letters and telephone calls from cardholders

15  affirmatively expressing their desire to participate in this action.  Settlement Class

16  members' overwhelmingly positive reaction to this settlement weighs heavily in

17  favor of approval.

18          Furthermore, the parties, recognizing the potential validity of the objections

19  to the schedule for filing objections to Plaintiff's attorney's fees application, have

20  obtained an extension so that objectors would have an opportunity to address the

21  fee application, and also expanded the number of Cy Pres Distribution nominees.

22          **3.      *The stage of the litigation and the extent of discovery completed***

23          The Settlement Agreement resulted from, and is the product of, hours of

24  meetings, negotiations, and analysis by knowledgeable and experienced Class

25  Counsel.  While the settlement was reached at a relatively early stage of discovery,

26  Plaintiff engaged in sufficient informal discovery to reach the reasoned conclusion

27  that the terms of this settlement are fair to and in the best interests of Settlement

28  Class members.

1
2
3

    ***4.    The risks of establishing liability and damages, and the range of the reasonableness of the settlement to a possible recovery in light of the risks of litigation.[9]***

4        Some courts have described the factor relating to the strength of the
5  plaintiff's case in comparison to the terms of the settlement as the most important.
6  <u>See, e.g.</u>, <u>Armstrong</u>, <u>supra</u>, 616 F.2d at 314 ("[T]he first factor, the strength of
7  plaintiffs' case on the merits balanced against the settlement offer, is generally
8  regarded as the most important.").  Notwithstanding, in considering this factor,
9  "the settlement or fairness hearing is not to be turned into a trial or rehearsal for
10  trial on the merits." <u>Officers for Justice</u>, <u>supra</u>, 688 F.2d at 625).  <u>See also</u> <u>EEOC</u>
11  <u>v. Hiram Walker & Sons, Inc.</u>, 768 F.2d 884, 888-89 (7th Cir. 1985) (noting that
12  the trial court should "refrain from resolving the merits of the controversy or
13  making a precise determination of the parties' respective legal rights.").  Indeed,
14  settlement, by its nature, is a compromise "where both sides gain as well as lose
15  something." <u>Patterson v. Stovall</u>, 528 F.2d 108, 115 (7th Cir. 1976); <u>see also</u>
16  <u>Officers for Justice</u>, <u>supra</u>, 688 F.2d at 625 ("Of course, the very essence of a
17  settlement is compromise, 'a yielding of absolutes and an abandoning of highest
18  hopes.'"). As one court noted, in language equally applicable here, "it would be
19  pure speculation to predict with any degree of certainty the probability of the
20  plaintiffs' success in continuing the litigation." <u>In re Combustion, Inc.</u>, 968 F.
21  Supp. 1116, 1127-28 (W.D. La. 1997).  A "primary reason for the uncertainty is
22  the extreme volatility of the issues presented in this case." <u>Id.</u> at 1128.  Thus, the
23  "settlement need only reflect a fair, reasonable, and adequate estimation of the
24  value of the case in view of what might happen at trial." <u>Id.</u> at 1129.

25

26
27
28

    [9]  While the risks of establishing liability, the risks of establishing damages, and the range of the reasonableness of the settlement to a possible recovery in light of the risks of litigation are listed as three separate considerations in <u>In re Oracle Securities Litigation</u>, 829 F. Supp. at 1179, because they are related, Plaintiff discusses them herein together.

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

1    Here, measured against the strength of Plaintiff's claims, the settlement is

2    fair and reasonable.  This case was far from a "sure thing," and Plaintiff faced

3    numerous obstacles during the litigation and negotiations, and she would have had

4    even more difficult obstacles to face had this case proceeded in litigation.

5    Although Plaintiff believes she has a strong case, Defendant disagrees, and

6    Defendant is not without substantial support for its position.  Specifically, the U.S.

7    Supreme Court has granted review of the Ninth Circuit's two to one majority

8    opinion in McCoy v. Chase Manhattan Bank, USA, N.A., 559 F.3d 963 (9th Cir.

9    2009), which was the only court to rule in favor of Plaintiff's position on the

10   central issue underlying the merits of this action, and the matter is currently

11   awaiting argument before the U.S. Supreme Court.  In McCoy, a divided panel of

12   the Ninth Circuit effectively overturned the opposite results in the prior

13   unpublished Memorandum Opinion issued in Evans v. Chase Bank USA, N.A.,

14   267 Fed. Appx. 692, 693 (9th Cir. 2008), which favored Defendant.  The 7th

15   Circuit, in Swanson v. Bank of Am., N.A., 559 F.3d 653, 2009 U.S. App. LEXIS

16   5812 (7th Cir. Ill., 2009), issued a published appellate level decision nearly

17   simultaneously with the McCoy case, but reached a conclusion opposite to that in

18   McCoy and against the position espoused by Plaintiff.  Finally, the 1st Circuit, in

19   Shaner v. Chase Bank USA, N.A., 587 F.3d 488 (1st Cir. Mass. 2009), also

20   reached a conclusion opposite to that in McCoy that would favor Citibank.

21   Additionally, the Federal Reserve Board, which wrote the Regulation Z provisions

22   at issue herein, has sided with Defendant's interpretation of the Regulation.  While

23   Plaintiff strongly believes that the McCoy case was correctly decided in the Ninth

24   Circuit, the fact that it is presently in front of the U.S. Supreme Court, the adverse

25   rulings in other similar cases (as discussed in Class Counsel's concurrent fee

26   application), and the ultimate uncertainty and risks involved in litigating the

27   instant action to a conclusion, clearly constitute a very substantial risk that class

28   members will receive nothing after years of litigation in the event this compromise

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

1   settlement is not approved by the Court[10].  Even this Court previously ruled in

2   favor of binding, individual arbitration, and enforcement of the class action waiver

3   in Defendant's contract.  Defendant continues to assert that all claims in this

4   action must be arbitrated on an individual basis, and that issue has yet to be

5   determined.  Moreover, the issue of certifying a nationwide litigation class could

6   still prove problematic.  Thus, resolution of several difficult and tricky issues still

7   remains outstanding.  Nevertheless, as set forth in the Settlement Agreement, the

8   Defendant has agreed to settle the case on the terms stated, including a common

9   fund totaling $10,000,000.  (Kramer, ¶¶ 20, 21, 23.)

10        After payment of all attorneys' fees, costs and incentive awards, if any,

11   awarded by the Court, each Settlement Class member who submits a valid claim

12   will receive $18.00 as a partial return of his/her additional finance charges.  In this

13   connection, it is worth noting that the damages for each class member are limited

14   to approximately one month's worth of additional finance charges based on a one

15   month delay in giving notice of the rate increase.  It is important to note that

16   Plaintiff has never contested, and cannot reasonably contest, Citibank's right to

17   raise a customer's interest rate *upon giving proper notice*.  Thus it is the

18   *retroactive* nature of Citibank's rate increases that gave rise to Plaintiff's

19   allegations herein, since in the case of a default or delinquency, no advance notice

20   of a rate increase was required, merely contemporaneous notice[11].  Typically, a

21   _____

22        [10]   Indeed, as a clear demonstration of the risks involved in litigation, another

23   action alleging essentially the same wrongdoing was previously pursued in this Court
     by Class Counsel against Citibank (Lowman v. Citibank, case no. CV 05-8097 RGK).

24   In that case, individual arbitration was compelled, and the claim was presented to an

25   arbitrator and heard in Utah.  The claim by that Plaintiff lost, with the arbitrator
     giving an award to Citibank.  This demonstrates the clear risks involved.

26
     [11]   See former 12 C.F.R. § 226.9(c)(1): "notice shall be given, however, before the

27   effective date of the change") and Comment 3 of the Official Staff Commentary

28   thereto (12 C.F.R. part 226 Supp. I: "a notice of change in terms is required, but it
                                                                    (continued...)

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

month's additional backdated finance charge is under $100 (in Plaintiff's case, it was $68.00). Thus, based on the numerous areas of uncertainty and in light of the risks of litigation, the settlement amount available to each claimant, which in this case will be $18.00, bears a reasonable relationship to his or her possible recovery. (Kramer, ¶ 10.) Defendant has vigorously denied any wrongdoing or liability of any kind and has asserted numerous defenses, both as to liability and the amount of damages, to the Plaintiff's allegations. Nevertheless, Defendant has consented to the Settlement Agreement to avoid the expense, inconvenience, and inherent risk of litigation as well as the concomitant interruption of its business operations.

### 5. *The risk of maintaining class action status through trial*

In addition to substantial risks on the merits of this case, there was a substantial risk that, absent this settlement, this case would not be certified as a litigation class action, or that it would not maintain class action status through trial. If this case should proceed in litigation, Defendant will vigorously oppose class certification and assert numerous defenses thereto, including a potential defense that its arbitration clause, requiring individual arbitration, should preclude class certification. Thus, the risk of maintaining class action status through trial is exceptionally high, and also weighs in favor of approval of the settlement. (Kramer, ¶ 21.)

### 6. *The range of the reasonableness of the settlement in light of the best possible recovery*

As set forth above, this settlement involves an all-cash settlement fund of $10 million. Even assuming Plaintiff obtained class certification, maintained class certification through trial, and prevailed on all issues at trial, in light of the best possible recovery, and consideration of the risk and other factors inherent in

---

[11] (...continued)
may be mailed or delivered as late as the effective date of the change . . . If there is an increased periodic rate or any other finance charge attributable to the consumer's delinquency or default...."

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

litigating the case to a conclusion, this all-cash settlement is very fair and reasonable for the Settlement Class members, who will receive back a portion of the additional interest they were charged.  While the total potential damages in this case, should the class prevail on all issues, are undoubtedly <u>very</u> substantial, so also are the risks, particularly in light of the fact that the Federal Reserve Board and the Solicitor General of the United States have filed an amicus brief in the U.S. Supreme Court proceeding in *McCoy*, opposing Plaintiff's interpretation of the Truth-in-Lending regulation that is the central issue of this case, and if the Supreme Court accepts their position then the class members herein will receive *nothing*.  Under these circumstances, where the entire $10 million Settlement Fund will be paid out by Citibank, and particularly when viewed in light of the very substantial risks involved, this settlement is fair and reasonable. (Kramer, ¶ 22.)

One other consideration in settling this action, although somewhat unique, is the current business climate.  Class Counsel was recently involved in another similar action against Washington Mutual Bank, which was taken over by federal authorities.  The failure of the bank essentially ended the class action against it and class members received nothing.  In essence, the current difficult economic times, coupled with the large number of recent bank failures and continuing uncertainty in the economy, further increase the risks of ongoing litigation, particularly when contrasted with the $10 million Citibank has agreed to pay to settle the case.  (Kramer, ¶ 18.)

### 7.   *Views of experienced counsel*

Two additional and important factors not specifically included in the list of factors set forth in <u>In re Oracle Securities Litigation</u>, 829 F. Supp. at 1179, bear mention here.  First, significantly, Class Counsel and counsel for Defendant both believe this settlement is fair, reasonable and in the best interest of the Settlement Class.  Class Counsel and counsel for Defendant have extensive experience in handling consumer class action litigation, including numerous cases relating to

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

credit card practices such as those at issue here, and are fully capable of litigating this case.  Class Counsel Barry L. Kramer has been approved as class counsel in numerous federal and state class actions against financial institutions based on their credit card practices.[12]  In addition, he has particular expertise with the issues involved herein, having been involved at all stages of the *McCoy, Evans, Swanson* and *Shaner* litigations referenced above, as well as numerous other cases involving the same issues.  (Kramer, ¶¶ 3, 5.)

### 8.     *Arms' length negotiation*

Second, it is also significant that this settlement is the result of arms' length negotiations.  The settlement was negotiated at arms' length through numerous conversations, in-person and telephonic meetings and informational exchanges to discuss resolving this action, as well as a formal mediation conducted with Martin Quinn of JAMS.  The Settlement Agreement was reached as a result of those negotiations and informational exchanges, with full knowledge of the potential damages as well as the very substantial and ongoing risks.  The Settlement Agreement resulted from, and is the product of negotiations and analysis by knowledgeable and experienced Class Counsel.  Further, where, as here, the terms of the settlement on their face suggest that the settlement is the result of a bona fide compromise, a presumption of regularity in the course of negotiations arises.  See <u>Jones v. Amalgamated Warbasse Houses, Inc.</u>, 97 F.R.D. 355, 359 (E.D.N.Y.

---

[12] These cases include the following: <u>Boehr v. Bank of America</u>, case no. CIV-99-2265-PHX (U.S.D.C. Ariz.); <u>Schwartz. v. Citibank</u>, case no. 00-00075 LGB (U.S.D.C. C.D. Cal.); <u>Mayemura. v. Chase Manhattan Bank</u>, case no. 00-00753 LGB (U.S.D.C. CD. Cal.); <u>Klausner v. First Union Direct Bank</u>, case no. 00-04267 LGB (U.S.D.C. C.D. Cal.); <u>Boehr v. American Express</u>, case no. BC256499 (Los Angeles Sup. Ct. - Complex Div.); <u>Shea v. Discover Bank</u>, case no. 00CC12582 (Orange Cty. Sup. Ct.); <u>Edell v. Bank of America</u>, case no. C-20010051 (Pima Cty. Ariz.); <u>Shea v. Household Bank</u>, case no. 00CC12585 (Orange Cty. Sup. Ct.); <u>Zauha & Kaplan v. Chase Manhattan Bank</u>, case no. 05CC00037 (Orange Cty. Sup. Ct.); <u>Leedy v. Wells Fargo Bank, N.A.</u>, case no. SACV 06-311 JVS (U.S.D.C. C.D. Cal.) and <u>Pai v. First Premier Bank</u>, case no. RG06303533 (Alameda Cty. Sup. Ct.), among others.

Notice & Motion for Final Approval of Settlement; Memo. of Points and Auth.

1982), aff'd, 721 F.2d 881 (2d Cir. 1983).  As the Seventh Circuit has observed in approving a class action settlement, "[t]he proof of the pudding [is] . . . in the eating."  Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co., 834 F.2d 677, 684 (7th Cir. 1987).  As discussed above, the terms of this settlement provide cash benefits to the Settlement Class and are, in light of the uncertainties of litigation, fair, adequate, and reasonable.  Therefore, the settlement, negotiated at arms' length, should be approved. (See Kramer, ¶¶ 8, 9.)

Courts have recognized that "[s]o long as the integrity of the arm's length negotiation process is preserved, . . . a strong initial presumption of fairness attaches to the proposed settlement, and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."  In re Nasdaq Market-Makers Antitrust Litig., 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (citations omitted); 4 NEWBERG ON CLASS ACTIONS, § 11.41, at 11-88 (4th ed. 2002) ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").  This and the other relevant factors discussed above weigh heavily in favor of approval of this settlement.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant her motion in its entirety.  The Defendant has authorized Plaintiff to advise the Court that it vigorously denies liability in this case, and that if the case is not settled it will vigorously oppose class certification on a litigated basis.  Nevertheless, as set forth in the Settlement Agreement, the Defendant has agreed to settle the case on the terms stated.

Respectfully Submitted,

Law Offices of Barry L. Kramer

Dated: November 22, 2010

/S/ - Barry L. Kramer
Attorney for Plaintiff

25