1  Barry L. Kramer,  Bar No. 61772
   *kramerlaw@aol.com*
2  Law Offices of Barry L. Kramer
   12428 Promontory Road
3  Los Angeles, California 90049
   Telephone: (310) 440-9761
4
5  Attorneys for Plaintiff Laura Hoffman

6

7

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA -- SOUTHERN DIVISION**

| | |
|---|---|
| 10  LAURA HOFFMAN, an individual, on ) behalf of herself and all others | Case No. SACV-06-571-AJG(MLGx) |
| 11  similarly situated, | **CLASS ACTION** |
| 12                        Plaintiff, | **CLASS COUNSEL'S NOTICE OF APPLICATION AND** |
| 13  vs. | **APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND** |
| 14  CITIBANK (SOUTH DAKOTA), N.A., and DOES 1 through 10, | **COSTS AND INCENTIVE AWARD** |
| 15  inclusive, | Date: December 13, 2010 |
| 16                        Defendants. | Time: 10:00 a.m. Ctrm: 10D |
| 17  _____ ) | Assigned to the Honorable Andrew J. Guilford, Courtroom 10D |
| 18 | |
| 19 | Action Filed:    May 5, 2006 Trial Date:       Not set |

20  **TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

21       **PLEASE TAKE NOTICE** that on December 13, 2010, at 10:00 a.m., in

22  Courtroom 10D of the above-referenced Court, located at 411 West Fourth Street,

23  Santa Ana, California 92701-4516, Plaintiff's counsel in the above-captioned

24  action shall seek an order from this Court awarding attorneys' fees and costs in the

25  amount of $2,500,000.00, and awarding Plaintiff Laura Hoffman an incentive

26  award in the amount of $5,000.00 for her time and effort in assisting Class

27  Counsel on behalf of the entire Class.

28       This application is made pursuant to Federal Rules of Civil Procedure rules

1  23(h) and 54(d)(2), and will be based on this notice; the attached memorandum of
2  points and authorities; the declaration of Barry L. Kramer filed concurrently
3  herewith; the reply papers in support of this application (if any); oral argument at
4  the hearing of this application; and all papers on file in this action.
5       This motion is made pursuant to this Court's Orders dated May 24, 2010
6  and November 16, 2010 and following the conference of counsel pursuant to
7  Local Rule 7-3, which took place on November 19, 2010, during which Defendant
8  indicated it will not oppose the substance of Plaintiff's Motion.
9
10 DATED: November 22, 2010        Respectfully Submitted,
11         Law Offices of Barry L. Kramer
12         /S/ - Barry L. Kramer
13         Attorneys for Plaintiff
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

1

# **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iv-

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THE SETTLEMENT BETWEEN PLAINTIFF AND DEFENDANT . . . . . . 3
　　1.   Cash Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
　　2.   Claims Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
　　3.   Cy Pres Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
　　4.   Claims Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　5.   Settlement Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　6.   Attorneys' Fees and Incentive Award . . . . . . . . . . . . . . . . . . . . . . 4
　　7.   Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　A.   The Court Has The Discretion To Award Attorneys' Fees That
　　　　Are Calculated As A Percentage Of The Value Of The
　　　　Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　B.   The Attorney's Fees Requested By Class Counsel Are
　　　　Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　C.   Utilizing the Lodestar Method of Calculating Damages would
　　　　Result in  a Similar Amount of Attorneys' Fees  . . . . . . . . . . . . . 13
　　D.   The Kerr Factors More Than Justify Using a Multiplier of 1.99
　　　　to Enhance the Lodestar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
　　　　(1) The time and labor required . . . . . . . . . . . . . . . . . . . . . . . . . . 15
　　　　(2) The novelty and difficulty of the questions involved . . . . . . . . 16
　　　　(3) The skill requisite to perform the legal service properly  . . . . . 16
　　　　(4) The preclusion of other employment by the attorney due to
　　　　　　acceptance of the case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
　　　　(5) The customary fee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
　　　　(6) Whether the fee is fixed or contingent  . . . . . . . . . . . . . . . . . . 19
　　　　(7) Time limitations imposed by the client or the circumstances  . . 20
　　　　(8) The amount involved and the results obtained . . . . . . . . . . . . . 20
　　　　(9) The experience, reputation, and ability of the attorneys  . . . . . 20
　　　　(10) The 'undesirability' of the case . . . . . . . . . . . . . . . . . . . . . . . 22
　　　　(11) The nature and length of the professional relationship with the
　　　　　　client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
　　　　(12) Awards in similar cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
　　E.   This Court Should Award an Incentive Award in the Amount
　　　　of $5,000 to Plaintiff Laura Hoffman . . . . . . . . . . . . . . . . . . . . . . 24

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## Cases:

Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

Blum v. Stenson, 465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Eltman v. Grandma Lee's, Inc., [1986-87 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,798 (E.D.N.Y.1986) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fadhl v. City and County of San Francisco, 859 F.2d 649, 651 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fickinger v. C.I. Planning Corp., 646 F. Supp. 622 (E.D. Pa.1986) (33% awarded) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Florida v. Dunne, 915 F.2d 542, 545 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 6

Friedlander v. Barnes, [1986-87 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,754, 1986 WL 5517 (S.D.N.Y.1986) . . . . . . . . . . . . . . . . . . . . . . . 10

Glendora Community Redevelopment Agency, 155 Cal. App. 3d 465 (1984) . . 14

Golden v. Shulman, [1988-89 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,060, 1988 WL 144718 (E.D.N.Y.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Greene v. Emersons Ltd., [1987 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,263, 1987 WL 11558 (S.D.N.Y.1987) . . . . . . . . . . . . . . . . . . . . . . . 10

Hasbrouck v. Texaco, Inc., 879 F.2d 632, 636-37 (9th Cir. 1989) . . . . . . . . . . . 12

Hoffman v. Citibank, N.A., 546 F.3d 1078 (9th Cir. Cal. 2008) . . . . . . . . . . . . . 17

In re Activision Securities Litigation, 723 F. Supp. 1373 (N.D. Cal. 1989) . . . . . 9

In re AIA Indus., Inc. Sec. Litig., No. 84-2276, 1988 WL 33883 (E.D. Pa. March 31, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Beverly Hills Fire Litigation, 639 F. Supp. 915 (E.D. Ky. 1986) . . . . . . . . 14

In re Continental Ill. Sec. Litig., 962 F.2d 566 (7th Cir. 1992) . . . . . . . . . . . . 5, 9

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

In re Crazy Eddie Securities Litig., 824 F. Supp. 320 (E.D.N.Y. 1993) . . . . . . . 10

In re Eagle Resources Corp., Inc. v. Baker Hughes, Inc., No. H-91-627 (S.D. Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Fiddler's Woods Bondholders Litig., [1987-88 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,537, 1987 WL 19239 (E.D.Pa.1987) . . . . . . . . . . . . 10

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768 (3d Cir. 1995), cert. denied, 116 S. Ct. 88 (1995) . . . . . . . . . . . . . . . . . . . . . 5

In re MDC Holdings Sec. Litig., [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474 (S.D. Cal. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

In re Pacific Enterprises Sec. Litig., 47 F.3d 373 (9th Cir. 1995) . . . . . . . . . . . . . . 9

In re Superior Beverage/Glass Container Consolidated Pretrial, 133 F.R.D. 119 (N.D. Ill, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Trilogy Sec. Litig., Case No. C-84-20617(A) (N.D. Cal. 1986) . . . . . . . . . 14

In re Wedtech Secs. Litig., 138 B.R. 5 (LBS) (S.D.N.Y. 1992) . . . . . . . . . . . . . . 10

In Re: Mercury Interactive Corp. Securities Litigation, 618 F.3d 988 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) . . . . . 15

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. Cal. 1975) . . . . . . . 15, 23

Ladewig v. Arizona Dept. of Revenue, 204 Ariz. 352, 63 P.3d 1089 (Ariz. Tax Ct. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

McCoy v. Chase Manhattan Bank, USA, N.A., 559 F.3d 963 (9th Cir. 2009, now vacated) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

Meriwether v. Coughlin, 727 F. Supp. 823, 830 (S.D.N.Y. 1989) . . . . . . . . . . . . 12

Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989) . . . 5, 9, 18

Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513 (6th Cir. 1993) . . . . . . 5

Rebney v. Wells Fargo Bank, N.A., 232 Cal. App. 3d 1344 (1991) . . . . . . . . . . 13

Rievman v. Burlington Northern R. Co., 118 F.R.D. 29 (S.D.N.Y. 1987) . . . . . . 14

v

<u>Rodriguez v. West Publ'g Corp.</u>, 563 F.3d 948, 958-959 (9th Cir. Cal. 2009) . . 24

<u>Sherin v. Smith</u>, [1987-88 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,582, 1987 WL 18851 (E.D.Pa.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Six Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Swedish Hosp. Corp. v. Shalala</u>, 1 F.3d 1261 (D.C. Cir. 1993) . . . . . . . . . . . . . . 5

<u>Washington Pub. Power Supply</u>, 19 F.3d 1291 (9th Cir. 1994) . . . . . . . . 5, 11, 12

<u>Wilson v. Bank of Am. Natl. Trust & Savs. Assn.</u>, Cal. Sup. Ct. Case No. 643872 (Aug. 16, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes:**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Cal. Civil Code §§ 1750 *et seq.* (Consumers Legal Remedies Act) . . . . . . . . 13, 16

**Rules:**

12 C.F.R. § 226.9(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Federal Rules of Civil Procedure Rule 11(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Other Authorities:**

4 <u>Newberg On Class Actions</u> § 14:6 (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . 14

A. Conte, <u>Attorney Fee Awards</u> § 1.09 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Court Awarded Attorney Fees, Report of the Third Circuit Task Force</u>, 108 F.R.D. 237, 254-59 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

John Coffee, <u>Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of the Law Through Class and Derivative Actions</u>, 86 Colum. L. Rev. 669 (1986) . . . . . . . . . . . . . . . . . . . . . . . 6

Judicial Salary Plan Locality Rate Pay Tables (http://www.uscourts.gov/Careers/Compensation/JudiciarySalaryPlanLocalityRatePayTables.aspx) . . . . . . . . . . . 18

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986) . . . 12

Thomas E. Willging & Shannon R. Wheatman, An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation (Federal Judicial Center 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Thomas E. Willging, Laurel L. Hooper, & Robert J. Niemic, An Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules, Federal Judicial Center Study 11 (Jan. 1996) . . . . . . . 6

www.laffeymatrix.com, visited 11/20/2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Class Counsel in this action respectfully submits this application seeking an award of attorneys' fees earned by virtue of the settlement with Defendant Citibank (South Dakota), N.A. (hereinafter referred to as "Defendant" or "Citibank").  The settlement represents the successful resolution of a complex case against Defendant, which was achieved only after Class Counsel undertook considerable efforts.

When this case was originally filed in 2006, Plaintiff Laura Hoffman was represented by Barry L. Kramer ("Class Counsel") and his co-counsel, the law firm of Strange & Carpenter, who worked extensively in conjunction with Class Counsel on this litigation for its first two years.  (Class Counsel and Strange & Carpenter are collectively referred to herein as "Counsel".)   As noted below, Strange & Carpenter withdrew as counsel in 2008, but Class Counsel continued to represent Plaintiff.

As set forth in Plaintiff's motion for final approval of settlement filed concurrently herewith, the parties have agreed on a $10,000,000.00 cash Settlement in this nationwide class action, all of which will be paid out by Citibank with no reversion to the Defendant.  As set forth below, Class Counsel, who is experienced in class actions, including many class actions against financial institutions based on credit card practices, has spent considerable time and effort over a period of more than 4½ years litigating this case, conducting a detailed analysis of the strengths and weaknesses of the merits of this case, and negotiating the present settlement.  (See Declaration of Barry L. Kramer in Support of Application for Award of Attorneys' Fees and Costs and Incentive Award ("Kramer Decl."), ¶ 12.)

After the classwide settlement was reached, Class Counsel presented the proposed settlement to the Court.  This Court preliminarily approved the

settlement, and notice was given to the Class.  Since that time, Class Counsel has spent additional time responding to hundreds of e-mails, telephone calls and letters from Class members wanting information about the case and settlement, and still continues to do so.

In addition, Plaintiff's Counsel have expended considerable efforts to prosecute this novel consumer class action against Defendant, and any fee has been wholly contingent upon the result achieved.

Accordingly, as compensation for his and his former co-counsel's efforts in this settlement, Class Counsel requests this Court to award him attorneys' fees in the amount of $2,500,000.00, which constitutes 25% of the $10,000,000.00 Settlement Amount and equates to a multiplier of only 1.99 times the lodestar, and which Defendant has agreed not to oppose.  A portion of these fees will be shared with his former co-counsel, the law firm of Strange & Carpenter.  Class Counsel seeks no additional reimbursement for the out of pocket expenses he has incurred.[1] As set forth below, this percentage fee request is in line with the percentage routinely requested and awarded in similar class actions.

As set forth in the concurrently filed motion for final approval of settlement, the proposed settlement is fair to the Settlement Class for a variety of reasons. Primarily, although Plaintiff believes she has a strong individual case, Defendant disagrees, and the central issue underlying the merits of this case is currently being considered by the U.S. Supreme Court.  Furthermore, the class action waiver in Defendant's cardmember agreement could potentially derail this case before a class gets certified.  Therefore, the issue of liability would be intensely litigated, as would class certification.  Years of litigation, including appeals, would involve uncertainty and potentially result in no payment to the Class.

---

[1] The two law firms who are going to split the fees took on this major litigation on a fully contingent basis and paid all out of pocket costs to obtain these results. (See Kramer Decl., ¶ 17.)

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

This settlement resulted from and is the product of extensive analysis by knowledgeable and experienced Class Counsel, and the requested compensation is reasonable and fair.  Class Counsel believes that this settlement is particularly fair, given the risks involved in the pending proceeding in the U.S. Supreme Court, the issue of the class action waiver and potential difficulties in certifying a nationwide litigation class.  Moreover, the requested fee is in line with similar class action fee awards, as discussed below.

## II.   THE SETTLEMENT BETWEEN PLAINTIFF AND DEFENDANT

The terms of the settlement, more fully set forth in Plaintiff's motion for final approval of settlement, are as follows:

### 1.   Cash Payment

Citibank has agreed to pay a total Settlement Amount of ten million dollars ($10,000,000.00) which will be paid in full regardless of the number of Claim Forms received.  After making payments to Eligible Settlement Class Members, and payment of Settlement Costs (including any Incentive Award and Attorney's Fees granted by the Court), the balance will constitute the Cy Pres Fund.

### 2.   Claims Process

To be eligible for a share of the settlement, Class Members must submit a valid and timely Claim Form, giving their name, address and Citibank account number, and confirming under penalty of perjury that they are eligible to participate in the settlement.  Claims will be subject to verification by Citibank and only one valid claim per account will be honored.  The deadline for submitting claims is February 11, 2011, but based on the number of claims received to date, it appears that the amount paid per valid claim will be the maximum share provided in the Settlement Agreement, which is $18.00.

### 3.   Cy Pres Fund

After paying Settlement Costs and claims-made awards to eligible

3

Settlement Class members, the portion of the Settlement Amount remaining, which is expected to be in the neighborhood of $7 million, will constitute the Cy Pres Fund to be shared equally among ten recipients nominated by Plaintiff and Defendant.

### 4.    Claims Administration

The settlement is being administered in house by Citibank.  The deadline for mailing Claim Forms is February 11, 2011.  Thereafter, Citibank will mail settlement checks to each Eligible Settlement Class Member.  The amounts of any checks remaining uncashed after 120 days will be included in the Cy Pres Fund.

### 5.    Settlement Costs

The costs of notice and settlement administration, any award of attorneys' fees and costs, and any incentive payment awarded to the named Plaintiff, are to be deducted from the Settlement Amount.

### 6.    Attorneys' Fees and Incentive Award

As part of the Settlement Costs, Class Counsel is hereby requesting an award of attorneys' fees and costs in the amount of $2,500,000.00, constituting 25% of the $10,000,000.00 cash value of the settlement, as well as an incentive payment of $5,000.00 to the named Plaintiff, Laura Hoffman.  As part of the Settlement Agreement, Citibank has agreed not to object to these awards.

### 7.    Notice

Notice to members of the Settlement Class has been given as set forth in Plaintiff's Final Approval motion.

As stated above, Defendant's counsel agreed not to object to this fee request.  For the reasons set forth herein, Class Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and in light of the risks incurred, the result achieved, and the effort expended.  Class Counsel respectfully submit that such fees should be awarded by the Court.

1

### III.   ARGUMENT

2

**A.**    **The Court Has The Discretion To Award Attorneys' Fees That Are**

3

**Calculated As A Percentage Of The Value Of The Settlement**

4

When calculating fee awards in cases where a class fund has been created,

5

the court can award fees based on a percentage of the value of the settlement.

6

Washington Pub. Power Supply, 19 F.3d 1291, 1296 (9th Cir. 1994).  In Paul,

7

Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989), the Ninth

8

Circuit, in observing that the district court has the discretion to decide what would

9

be reasonable compensation for creating a common fund, advised: "A task force

10

commissioned by the Third Circuit has recommended that compensation for

11

creating common funds be calculated by a percentage of the funds created."  Id. at

12

272 (citing Court Awarded Attorney Fees, Report of the Third Circuit Task Force,

13

108 F.R.D. 237, 254-59 (3d Cir. 1985); and Blum v. Stenson, 465 U.S. 886, 900,

14

n.16 (1984) (noting that the percentage basis method is grounded in tradition and

15

therefore an acceptable way of calculating the fee award)).

16

The general trend of the courts has been toward the percentage of the

17

recovery method in common fund cases.  See, for example, In re General Motors

18

Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 (3d Cir.

19

1995), cert. denied, 116 S. Ct. 88 (1995) (stating that "courts use the percentage of

20

recovery method in common fund cases on the theory that the class would be

21

unjustly enriched if it did not compensate counsel responsible for generating the

22

valuable fund bestowed on the class"); Swedish Hosp. Corp. v. Shalala, 1 F.3d

23

1261, 1271 (D.C. Cir. 1993) (holding that the percentage-of-the-fund method is

24

the appropriate  mechanism for determining attorneys' fee awards in common fund

25

cases); In re Continental Ill. Sec. Litig., 962 F.2d 566, 572-73 (7th Cir. 1992)

26

(holding that "class counsel are entitled to the fee they would have received had

27

they handled a similar suit on a contingent fee basis, with a similar outcome, for a

28

paying client"); Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 515-16

1   (6th Cir. 1993) (recognizing the recent trend toward adoption of a percentage-of-

2   the-fund method in common fund cases); <u>Camden I Condominium Ass'n, Inc. v.</u>

3   <u>Dunkle</u>, 946 F.2d 768, 774 (11th Cir. 1991) (holding that the percentage-of-the-

4   fund approach is better reasoned in a common fund case).  Indeed, the Ninth

5   Circuit has observed "the recent ground swell of support for mandating a

6   percentage-of-the-fund approach in common fund cases." <u>Florida v. Dunne</u>, 915

7   F.2d 542, 545 (9th Cir. 1990).  The extent of the judiciary's preference for the

8   percentage-of-recovery method in common fund cases is underlined by the data in

9   a Federal Judicial Center Study released in 1996.  *See* Thomas E. Willging, Laurel

10  L. Hooper, & Robert J. Niemic, <u>An Empirical Study of Class Actions in Four</u>

11  <u>Federal District Courts: Final Report to the Advisory Committee on Civil Rules,</u>

12  <u>Federal Judicial Center Study</u> 11 (Jan. 1996) (stating that "three of the four

13  districts calculated fees using the percentage-of-recovery method far more often

14  than the lodestar method.").  Intensively focusing on class actions in four selected

15  federal district courts – selected because of their high volume of, and substantial

16  experience with, class actions – the study found that the percentage method was

17  used in seventy-eight percent of the cases in the Northern District of California,

18  for example. <u>Id.</u> at 152.

19       Applying the percentage method substantially benefits the class members.

20  The percentage approach establishes a parallelism between the interests of counsel

21  and the class.  Since class counsel receive a percentage of the class recovery, the

22  plaintiff's attorneys' fees rise proportionately with a rise in the class recovery.

23  Therefore, the attorneys will receive the best fee when the attorneys obtain the best

24  recovery for the class.  Hence, under the percentage approach, the class members

25  and the class counsel have the same interest -- maximizing the recovery of the

26  class.  <u>See, e.g.</u>, John Coffee, <u>Understanding the Plaintiff's Attorney: The</u>

27  <u>Implications of Economic Theory for Private Enforcement of the Law Through</u>

28  <u>Class and Derivative Actions</u>, 86 Colum. L. Rev. 669, 724-25 (1986).

1    The percentage-of-fund approach also discourages protracted litigation and
2    encourages settlements, which are favored in class actions:

3        The judicial system and the public benefit from such prompt resolution of
4        complex, potentially protracted litigation.  Early resolution of complex
5        cases is therefore much to be desired.  It avoids having the court deal with
6        all the problems a protracted, complex case can create and frees its
7        resources so that other matters can be processed more expeditiously.  Early
8        settlements benefit everyone involved in the process and everything that can
9        be done to encourage such settlements - especially in complex class action
10       cases - should be done.

11   In re MDC Holdings Sec. Litig., [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶
12   95,474, at 97,488-92 (S.D. Cal. 1990) (footnote and citations omitted.).

13       Furthermore, the percentage approach encourages efficient use of the
14   attorneys' time and money; excessive work does not produce an additional fee.
15   Regardless of the number of hours expended on the case or the number of motions
16   argued before the court, class counsel receives the same percentage of the
17   recovery.  Thus, class counsel is motivated to make the best use of legal  resources
18   because wasted time and resources reduce the net fee for the case.  The efficiency
19   of class counsel ensures that class members pay only for effective representation.
20

21   **B.**      **The Attorney's Fees Requested By Class Counsel Are Reasonable**

22       Class Counsel's fee request here is reasonable.  In addressing a fee
23   application in a multi-million dollar settlement of a securities class action, Chief
24   Magistrate Judge (Ret.) Harry R. McCue of the United States District Court for the
25   Southern District of California declared as follows:

26       Plaintiffs' counsel's efforts throughout this litigation were performed
27       on a wholly contingent basis.  It is clear that plaintiffs' counsel took
28       significant risks throughout the litigation and produced a substantial

7

1    common fund.  In these circumstances, it necessarily follows that
2    plaintiffs' counsel are entitled to the award of a fee based on a
3    percentage of the benefit conferred.[2]

4  Here, the benefit for Settlement Class members consists of a $10 million cash

5  payment directly from the Defendant.  Without this lawsuit, Settlement Class

6  members' only recourse would be to pursue their claims on their own behalf at

7  their own expense, which would rarely, if ever, be practical or likely in light of the

8  small individual damages.

9    Current and former cardholders of the Defendant have complicated claims

10  against the Defendant, which are expensive to litigate.  They should have

11  reasonable access to counsel with the ability and experience necessary to analyze

12  and litigate these complex issues, including expertise as to how financial

13  institutions operate and process fees and expertise in handling class action cases

14  on behalf of large settlement classes.  In complex class actions, able counsel for

15  plaintiffs can be retained only on a contingent basis.  A large segment of the

16  public would be denied a remedy for such conduct if contingent fees awarded by

17  the courts did not fairly compensate counsel for the services provided, the serious

18  risks undertaken, and the delay before compensation is received.  (See Kramer

19  Decl., ¶ 19.)

20    Here, Class Counsel has extensive experience in class action work.  Over

21  the last 14 years, Barry L. Kramer has served as lead counsel in numerous federal

22  and state class actions.  The settlements negotiated have resulted in millions of

23  dollars to plaintiff settlement classes.  (See Kramer Decl., ¶ 5.)

24    The complexity and societal importance of this class action involving

25  certain charges by Defendant assessed to its cardholders' accounts calls for the

26  most able counsel obtainable for Plaintiff and Settlement Class members.

27  _____

28    [2]    In re MDC Holdings Sec. Litig., [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH)
¶ 95,474, at 97,488-92 (S.D.Cal.1990) (footnote and citations omitted.)

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

Defendant is well-known and in the public eye; able Class Counsel are necessary to handle a settlement class and to respond to Settlement Class members' inquiries.  In order to encourage first rate attorneys to represent plaintiffs on a contingent basis in this type of socially important litigation, the attorneys' fees awarded should reflect this goal.  In this case, the nature of the work is highly complex and difficult.  Few, if any, individuals would be in a position to fund and litigate this complex, time consuming and expensive litigation on their own.  (See Kramer Decl., ¶ 20.)

The courts have applied these considerations in awarding fees as a percentage-of-the-fund.[3]  In Six Mexican Workers, the Ninth Circuit held, ". . . *a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery.*"  904 F.2d 1311 (citing Blum v. Stenson, 465 U.S. 886, 900 n.16) (emphasis added.)

Compensating counsel on a percentage basis is consistent with the practice in the private marketplace, where plaintiffs' attorneys are customarily compensated on the "percentage of the recovery" method.  In determining the reasonableness of the fee award, courts apply, "at least implicitly, principles parallel to the market's in determining and awarding attorney fees." In re Continental Illinois Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992) (citation omitted.)  Under this approach, the question becomes: "What would [the] lawyers have gotten pursuant to [a] contingent fee contract?"  Ibid.  It also provides plaintiff's counsel with a strong incentive to effectuate the maximum possible recovery in the shortest amount of time necessary under the circumstances.

In In re Activision Securities Litigation, 723 F. Supp. 1373 (N.D. Cal. 1989), the court reviewed and summarized numerous awards in common fund

---

[3]   Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989); Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990); and In re Pacific Enterprises Sec. Litig., 47 F.3d 373 (9th Cir. 1995).

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

1    cases, and found that these cases averaged near 30% of the fund - the court

2    awarding 32.8% in the case at issue.  Id. at 1377-79 (citing Golden v. Shulman,

3    [1988-89 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,060, 1988 WL

4    144718 (E.D.N.Y.1988) (calculating lodestar, applying multiplier and finding that

5    30% is within range and justified); In re AIA Indus., Inc. Sec. Litig., No. 84-2276,

6    1988 WL 33883 (E.D. Pa. March 31, 1988) (33% awarded); Sherin v. Smith,

7    [1987-88 Decisions Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,582, 1987 WL

8    18851 (E.D.Pa.1987) (award including multiplier 27.9%; court commented on the

9    efficiency with which the case was resolved and took that into consideration in

10   setting fee); In re Fiddler's Woods Bondholders Litig., [1987-88 Decisions

11   Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,537, 1987 WL 19239 (E.D.Pa.1987)

12   (award of 32.7%); Greene v. Emersons Ltd., [1987 Decisions Transfer Binder]

13   Fed.Sec.L.Rep. (CCH) ¶ 93,263, 1987 WL 11558 (S.D.N.Y.1987) (fees and costs

14   awarded were 46.2%); Fickinger v. C.I. Planning Corp., 646 F. Supp. 622 (E.D.

15   Pa.1986) (33% awarded); Friedlander v. Barnes, [1986-87 Decisions Transfer

16   Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,754, 1986 WL 5517 (S.D.N.Y.1986)

17   (approximately 30% awarded); Eltman v. Grandma Lee's, Inc., [1986-87 Decisions

18   Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,798 (E.D.N.Y.1986) (33%

19   awarded)).  See also In re Wedtech Secs. Litig., 138 B.R. 5 (LBS) (S.D.N.Y. 1992)

20   (court awarded fees of 33% of the $53 million settlement fund and also awarded

21   expenses); In re Eagle Resources Corp., Inc. v. Baker Hughes, Inc., No. H-91-627

22   (S.D. Tex. 1994) (court awarded fees of 30.8% of the $52.5 million settlement,

23   plus expenses); In re Crazy Eddie Securities Litig., 824 F. Supp. 320 (E.D.N.Y.

24   1993) (court approved a fee of $14.2 million, representing approximately 33.8% of

25   a $42 million settlement fund, plus $2 million in disbursements).  Here, Class

26   Counsel has requested 25% of the total settlement value.  This percentage clearly

27   falls within the acceptable range of fees commonly awarded to class counsel as

28   noted above.

1       A more recent survey of class actions published by the Federal Judicial

2  Center has found that "attorney fees typically represented about 29% of the total

3  monetary recovery or settlement." *See* Thomas E. Willging & Shannon R.

4  Wheatman, <u>An Empirical Examination of Attorneys' Choice of Forum in Class</u>

5  <u>Action Litigation</u> (Federal Judicial Center 2005) at 53.  Here, the requested

6  attorneys' fees and costs amount to only 25% of the settlement.

7       Here also, Class Counsel's risk was great in that the work was performed on

8  a wholly contingent basis.  (See Kramer Decl., ¶ 17.)  Considering the multitude of

9  issues and the substantial defenses asserted by Defendant, the Settlement Class is

10  at risk in that they might not be able to overcome dispositive motions by

11  Defendant and then, if able to do so, they are at tremendous risk of not obtaining

12  any meaningful recovery at trial.  The substantial risk factor that Class Counsel

13  could spend years litigating this case and receive nothing for his time and effort

14  and money spent, if, for example, this case was not certified as a class action,

15  should be considered by this Court in granting the requested fee award.

16       Counsel herein accepted the substantial risk of no recovery in this case with

17  the reasonable expectancy that, if they created a substantial benefit for the class,

18  they would receive an enhanced fee (Kramer Decl., ¶ 18).  <u>See</u> <u>In re Washington</u>

19  <u>Pub. Power Supply</u>, 19 F.3d at 1302.  Awarding attorneys' fees in this case of 25%

20  of the common fund will reasonably compensate them for the risk of nonpayment

21  they assumed, consistent with the practice in the private legal market for

22  rewarding counsel for accepting cases on a contingency basis.  The Ninth Circuit

23  in <u>Washington Pub. Power Supply</u> explained why class counsel who successfully

24  prosecute a class action on a contingency basis should receive an enhanced fee to

25  compensate for the risk of no recovery:

26       It is an established practice in the private legal market to reward

27       attorneys for taking the risk of non-payment by paying them a

28       premium over their normal hourly rates for winning contingency

1    cases.  *See* Richard Posner, <u>Economic Analysis of Law</u> § 21.9, at 534-

2    35 (3d ed. 1986).  **Contingent fees that may far exceed the market**

3    **value of the services if rendered on a non-contingent basis are**

4    **accepted in the legal profession as a legitimate way of assuring**

5    **competent representation for plaintiffs who could not afford to**

6    **pay on an hourly basis regardless whether they win or lose**.

7    [citations omitted]  As the court observed in <u>Behrens v. Wometco</u>

8    <u>Enters., Inc.</u>, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21

9    (11th Cir. 1990), "if this 'bonus' methodology did not exist, very few

10   lawyers could take on the representation of a class client given the

11   investment of substantial time, effort, and money, especially in light

12   of the risks of recovering nothing."

13   19 F.3d at 1299-1300 (emphasis added).  Similarly, one commentator has

14   observed:

15   Lawyers engaged in a contingent common fund fee award case must

16   similarly invest time and money -- usually a large multiple of

17   expenditures that are experienced in individual cases -- without

18   payment or guarantee of payment. . . . **The court, in its discretion,**

19   **should award a fee that is higher than strictly an hourly fee for**

20   **noncontingent services, to compensate the lawyer for assuming**

21   **this large contingent risk of nonpayment when the lawyer has**

22   **performed and expended monies for the benefit of the class**. . . .

23   A. Conte, <u>Attorney Fee Awards</u> § 1.09 (emphasis added).  Without the prospect of

24   a substantial reward for the risks assumed by Class Counsel in undertaking this

25   case, Plaintiff may never have been able to find counsel to prosecute the class

26   claims.  <u>See</u> <u>Hasbrouck v. Texaco, Inc.</u>, 879 F.2d 632, 636-37 (9th Cir. 1989);

27   <u>Fadhl v. City and County of San Francisco</u>, 859 F.2d 649, 651 (9th Cir. 1986);

28   <u>Meriwether v. Coughlin</u>, 727 F. Supp. 823, 830 (S.D.N.Y. 1989).

1    As this Court knows, class actions involve risks, both in spending a

2    substantial amount of attorneys' time without the guarantee of being paid at all

3    and in advancing out of pocket expenses.  The questions involved in this case are

4    novel and difficult.  This action has involved causes of action for violation of

5    Truth-in-Lending regulations, for violation of the Consumers Legal Remedies Act,

6    for Unfair and Deceptive Practices under Cal. Bus. & Prof. Code §§ 17200, *et*

7    *seq.*, and for violation of other states' consumer protection laws.

8        Class Counsel was not assured of receiving any fee in this litigation, and, in

9    fact, has not been paid.  The contingency included both the merits of the action

10   and whether the class would be certified.  Class Counsel and his former co-counsel

11   also advanced all costs on behalf of the Representative Plaintiff and the Settlement

12   Class. (Kramer Decl., ¶¶ 17-18.)

13

14   **C.    Utilizing the Lodestar Method of Calculating Damages would Result in**

15       **a Similar Amount of Attorneys' Fees**

16       As set forth above, courts have wide discretion to award attorneys' fees in

17   class actions.  The lodestar method of awarding is another method of calculating

18   attorneys' fees in a class action, which involves a calculation of a base amount

19   from a compilation of time spent and reasonable hourly compensation.  The base

20   amount is then increased by a "multiplier" in light of various factors, including the

21   contingent nature of the case and the quality of the attorney's work.  Rebney v.

22   Wells Fargo Bank, N.A., 232 Cal. App. 3d 1344, 1347 (1991).  In the instant case,

23   the total lodestar spent and to be spent on this case by Class Counsel and his

24   previous co-counsel, Strange & Carpenter, is $1,255,705 including attorney and

25   paralegal time and out-of-pocket costs.[4]  (Details are set forth in the concurrently

26   filed Declaration of Barry Kramer and in the supporting exhibits thereto.)  Thus,

27

28

---

[4] This does not include any allowance for the Lowman case discussed below.

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

1    Class Counsel's fee request represents a multiplier of 1.99 times Counsel's

2    combined lodestars, which is eminently reasonable given the risks of this

3    litigation, and the other <u>Kerr</u> factors discussed more fully below.  (See Kramer

4    Decl., ¶ 15.)   <u>See also</u> 4 <u>Newberg On Class Actions</u> § 14:6, at 578 (4th ed. 2002)

5    ("Courts applying the lodestar approach will often use large multipliers or

6    monetary enhancements of the time/rate (lodestar) calculation in order to reach fee

7    award results comparable to percentage of recovery cases.  Multiples ranging from

8    one to four frequently are awarded in common fund cases when the lodestar

9    method is applied.").  <u>See</u> <u>Wilson v. Bank of Am. Natl. Trust & Savs. Assn.</u>, Cal.

10   Sup. Ct. Case No. 643872 (Aug. 16, 1982) (cited in Newberg, <u>supra</u>, § 14:6 at 578,

11   n. 87) (multiplier of up to 10); <u>In re Beverly Hills Fire Litigation</u>, 639 F. Supp. 915

12   (E.D. Ky. 1986) (multiplier of 5); <u>Ladewig v. Arizona Dept. of Revenue</u>, 204 Ariz.

13   352, 63 P.3d 1089, 1096 (Ariz. Tax Ct. 2003) (multiplier of 6); <u>In re Trilogy Sec.</u>

14   <u>Litig.</u>, Case No. C-84-20617(A) (N.D. Cal. 1986) (multiplier of 4.37) (cited in

15   Newberg, <u>supra</u>, § 14:6 at 578, n. 86); and <u>Rievman v. Burlington Northern R.</u>

16   <u>Co.</u>, 118 F.R.D. 29 (S.D.N.Y. 1987) (multiplier of 3.26).  <u>See also</u> <u>Glendora</u>

17   <u>Community Redevelopment Agency</u>, 155 Cal. App. 3d 465 (1984) (affirming an

18   award of a contingency fee which was up to 12 times the reasonable hourly fee).

19   <u>See also</u> <u>In re Superior Beverage/Glass Container Consolidated Pretrial</u>, 133

20   F.R.D. 119, 131 (N.D. Ill, 1990) ("There should be no arbitrary ceiling on

21   multipliers.  If a substantial result is magically achieved in record short time, the

22   multiplier should reflect it.").

23       Thus, there is no question that the fee requested in this case is reasonable

24   and appropriate.

25   / / /

26   / / /

27   / / /

28   / / /

1

2

## D. The Kerr Factors More Than Justify Using a Multiplier of 1.99 to Enhance the Lodestar

3

4

5

6

7

8

9

10

In <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. Cal. 1975), the Ninth Circuit adopted the Fifth Circuit's 12-factor test enunciated in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), for determining whether an award of attorney's fees is reasonable.  The following analysis of the twelve Kerr-Johnson factors shows that Class Counsel's fee request herein is reasonable and justifies applying the requested multiplier of 1.99 to Counsel's combined lodestars.  In fact, given the substantial risks involved, as discussed below, a much higher multiplier would be justified.

11

### (1) The time and labor required

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The time and labor required were substantial.  During the more than 4½ years that this case has been pending, Counsel, among other things: researched, analyzed and compiled a comprehensive complaint and analysis of potential class damages; opposed the removal of the action to federal court and made a motion to remand; opposed a motion to compel arbitration; researched the law on each cause of action; sought and obtained permission to file an interlocutory appeal of the arbitration issue after the Court's ruling to compel binding, individual arbitration; filed, briefed, and successfully prosecuted an appeal, resulting in a published opinion; initiated and conducted extensive discovery into the arbitration issue; prepared and filed two amended complaints; made numerous strategic and tactical decisions in conjunction with rapid and ongoing changes in the law; successfully negotiated this favorable settlement for the Class after participating in arms' length settlement negotiations; sought and obtained Preliminary Approval of the Settlement; responded to hundreds of inquiries; monitored the notice process; sought and obtained a modification of the Preliminary Approval in order to comply with the Ninth's Circuit recent ruling in <u>In Re: Mercury Interactive Corp. Securities Litigation</u>, 618 F.3d 988 (9th Cir. 2010); is seeking Final Approval of

the Settlement; and will continue to expend additional time and effort on this matter before it is concluded.  (See Kramer Decl., ¶ 12.)  Counsel herein have expended over 1,700 hours of labor on it and Class Counsel expects to expend at least an additional 50 hours in future, incurring a total combined lodestar of $1,255,705 at their normal billing rates.  (Kramer Decl. ¶ 15.)

### (2) The novelty and difficulty of the questions involved

The allegations of retrospective credit card interest rate increases herein involved close analysis and resolution of conflicting interpretations of highly technical Truth-in-Lending regulations, as well as issues regarding the enforceability of arbitration clauses in the class action context, and were pioneered by Counsel herein.  As far as Class Counsel is aware, this is the first case with allegations of this nature that has proceeded to settlement, and no other lawyers have been able to successfully resolve these types of complicated, important, and novel claims.  (Kramer Decl. ¶ 21.)

### (3) The skill requisite to perform the legal service properly

Class Counsel respectfully submits that this case required considerable skill. On May 5, 2006, Plaintiff Laura Hoffman filed this case in the Superior Court of Orange County, California, on behalf of a class of California consumers, alleging that Citibank's practice of retroactively increasing consumers' interest rates without warning or advance notice, thus creating additional lump sum finance charges, was unfair and deceptive and a violation of California's consumer protection laws, specifically the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq*.) and the Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code §§ 17200, *et seq*.).  Prior to the filing, Counsel spent a substantial amount of time and effort researching and developing the theory and strategy that was followed in this action.  This required considerable care, as other cases raising similar allegations against Citibank had proven unsuccessful in the past.  For example, in a previous nationwide class action filed by Counsel against Citibank, <u>Lowman &</u>

<u>Bailey v. Citibank</u>, U.S. District Court (C.D. Cal) case no. CV 05-8097 RGK ("Lowman"), discussed more fully below, Citibank had successfully moved to stay the case pending arbitration.  In this case too, Citibank was initially successful in its attempt to compel arbitration and stay the action, but Counsel were able to have the Court's Arbitration Order certified for immediate appeal, pursuant to 28 U.S.C. § 1292(b), and thereafter prosecuted a successful appeal, resulting in a published opinion of the Ninth Circuit (<u>Hoffman v. Citibank</u>, N.A., 546 F.3d 1078 (9th Cir. Cal. 2008), discussing the unconscionability of Citibank's class arbitration waiver under California law, with a concurring opinion by Judge Trott noting that this area of law was far from settled).  Following remand, Class Counsel engaged in an intensive course of discovery, and then successfully negotiated this favorable settlement for the Class after participating in arms' length settlement negotiations, and obtained preliminary approval thereof.  During all this time, Citibank was represented by able counsel who fought hard on all fronts, and Class Counsel respectfully submits that the settlement of this case was due to his skill and experience in litigating and negotiating.

Indeed, Class Counsel believes that he has demonstrated singularly unique and specialized skills which have enabled him to successfully pursue this action. This knowledge, skill and experience includes a thorough understanding of credit card litigation, class actions, consumer protection, arbitration and class action waivers, and the billing practices and procedures of Defendant.  This experience has been gathered over a period of more than ten years.  (Kramer Decl., ¶ 10.)

**(4) The preclusion of other employment by the attorney due to acceptance of the case**

The litigation has required significant attention, evidenced by the substantial amount of time spent.  This level of commitment precluded Counsel from accepting other engagements during certain periods of this litigation when the work was particularly heavy.  Counsel also risked up front expenses, as noted

below.

**(5) The customary fee**

In the Ninth Circuit, the "benchmark" percentage for attorneys' fee awards in common fund cases is 25%.  <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989).  Class Counsel's fee request is therefore in line with the customary fee.  Furthermore, Class Counsel's and his former co-counsel's hourly rates, as reflected in their lodestars, are their usual and customary hourly rates for complex litigation of this kind, having been applied in several recent class action settlements (most recently, in <u>Cardenas v. Chase Manhattan Bank</u>, Orange County Superior Court, Civil Complex case no. 04CC00013, and in <u>Caro-Greene v. Capital One Bank</u>, Los Angeles Superior Court (Central Civil West) case no. BC 382095), and are commensurate with rates for other senior class action attorneys conducting complex litigation in the Los Angeles/Orange County area. (Kramer Decl., ¶ 16.)

These rates are also in line with the current rates as given in the "Adjusted Laffey Matrix" (www.laffeymatrix.com, visited 11/20/2010).  This shows the current hourly rates for attorneys with over 20 years' experience in the Washington-Baltimore area as being $709.  (The corresponding rate for attorneys with 11-19 years' experience is $589.)  Local rates in Southern California are slightly higher: see, for example the Judicial Salary Plan Locality Rate Pay Tables (http://www.uscourts.gov/Careers/Compensation/JudiciarySalaryPlanLocalityRate PayTables.aspx, visited 11/20/2010) which reflect a Locality Pay Differential of +24.22% for the Washington-Baltimore area and +27.16% for the Los Angeles-Long Beach-Riverside area.  Applying the ratio of these two factors to the Adjusted Laffey Matrix rate gives an hourly rate of (1.2716/1.2422) x 709.00 = $725.78 per hour.  This is almost exactly in line with the hourly rate of $725.00 used to calculate the hourly lodestar herein for attorneys Kramer and Strange.  For attorney Carpenter, who has 15 years of experience, the corresponding calculation

1   is (1.2716/1.2422) x 589.00 = $602.94 per hour, which also agrees with the hourly

2   rate of $600.00 used for her lodestar.

3   **(6) Whether the fee is fixed or contingent**

4   Counsel were not assured of receiving any fee in this litigation, and, in fact,

5   have not been paid anything to date over four years of work. The contingency

6   included both the merits of the action and whether a class would be certified.

7   Counsel also advanced all costs. (See Kramer Decl., ¶ 17.) The highly risky

8   contingent nature of this litigation is evidenced by the fact that, as discussed more

9   fully below, other cases raising similar allegations have proven unsuccessful in the

10  past. For example, in <u>Lowman</u>, an earlier class action filed by Counsel herein in

11  2005 that contained similar allegations to the present case against Citibank,

12  Citibank successfully moved to stay the case in March 2006 pending arbitration,

13  and Class Counsel took the matter to a hearing before the American Arbitration

14  Association in Salt Lake City. The arbitrator ruled in Defendant's favor and

15  judgment based thereon was ultimately entered in 2008. Counsel herein expended

16  over 300 hours on that case, and incurred a combined lodestar of over $200,000,

17  but received <u>nothing</u> for their efforts. (Kramer Decl. ¶ 23.) Counsel's work on

18  <u>Lowman</u> has not been included in the lodestar for this case, although the

19  experience they gained in <u>Lowman</u>, and the knowledge of Citibank's contracts and

20  procedures that they garnered, undoubtedly contributed materially to the

21  successful outcome of this action. (If those hours were included, Counsel's total

22  lodestar would be increased to over $ 1,455,000, and the multiplier requested

23  would be reduced to under 1.72.)

24  Another similar action, <u>Brenda Johnson v. Citibank</u>, (JAMS Arbitration

25  Proceeding no. 1220033312) filed by Counsel as a class arbitration proceeding

26  against Citibank in April 2005, had to be dropped a few months thereafter, as the

27  named plaintiff had declared bankruptcy. This is a constant risk in this type of

28  litigation, where, by the very nature of the case, the class members are going to be

19

in financial difficulties. (Kramer Decl. ¶ 24.)

From the outset, therefore, Counsel knew that this case would be vigorously defended and that Citibank would try to find a way of getting it thrown out if at all possible.  Nevertheless, they filed this case on a contingent basis fully knowing its highly risky nature.  Accordingly, as noted in <u>Behrens</u>, supra, Class Counsel should be rewarded by a multiplier to compensate for the risk they incurred.

**(7) Time limitations imposed by the client or the circumstances**

This only became a significant factor this year, when it became apparent that the U.S. Supreme Court would be taking an interest in the *McCoy* matter referenced below.  This raised the stakes in this matter and made it desirable for both sides to finalize the settlement before any ruling came down from that Court.

**(8) The amount involved and the results obtained**

Class Counsel's efforts have resulted in Citibank creating a $10 million settlement fund, thus realizing Plaintiff's ultimate goal of making monetary compensation available to those Citibank cardholders who incurred retroactive rate increases.  Class Counsel respectfully submits that, given the uncertainties surrounding this litigation, this successful outcome is a very satisfactory result.

Furthermore, Class Counsel believes that this litigation, and other similar cases he has filed, have helped to bring about a change in the regulatory climate and major changes in Regulation Z itself to provide additional protections for credit card borrowers.  Since this case was filed, new Truth-in-Lending regulations have been adopted by the Federal Reserve Board, which came into force in August 2009 and effectively prohibit the practices complained of here.

**(9) The experience, reputation, and ability of the attorneys**

As set forth in his concurrently filed Declaration in Support of this Application, Class Counsel Barry L. Kramer has over 20 years experience as a practicing attorney, having graduated from UCLA law school in 1974, as well as extensive experience in class actions, having been approved as class counsel

1    (along with Strange & Carpenter[5]) in the settlement of numerous federal and state

2    class actions against financial institutions based on their credit card practices.

3    These cases include the following: <u>Boehr v. Bank of America</u>, Case No. CIV-99-

4    2265-PHX-RCB (United States District Court for the District of Arizona);

5    <u>Schwartz, et al. v. Citibank South Dakota, N.A., et al.</u>, Case No. 00-00075 LGB

6    (JWJx) (United States District Court for the Central District of California);

7    <u>Mayemura, et al. v. Chase Manhattan Bank USA, N.A.</u>, Case No. 00-00753 LGB

8    (JWJx) (United States District Court for the Central District of California);

9    <u>Klausner v. First Union Direct Bank, N.A.</u>, Case No. 00-04267 LGB (AJWx)

10   (United States District Court for the Central District of California); <u>Boehr v.</u>

11   <u>American Express</u>, Case No. BC256499 (Los Angeles Superior Court - Complex

12   Division); <u>Shea v. Discover Bank</u>, Orange County Superior Court case no.

13   00CC12582; <u>Edell v. Bank of America NA (USA)</u>, Pima County Arizona case no.

14   C-20010051; <u>Shea v. Household Bank (SB), N.A.</u>, Orange County Superior Court

15   case no. 00CC12585; <u>Zauha & Kaplan v. Chase Manhattan Bank</u>, Orange County

16   Superior Court case no. 05CC00037; <u>Leedy v. Wells Fargo Bank, N.A.</u>, U.S.

17   District Court (Central District of California) case no. SACV 06-311 JVS (RNBx);

18   and <u>Pai v. First Premier Bank & Premier Bankcard, Inc.</u>, Alameda County

19   Superior Court case no. RG06303533, among others.  (Kramer Decl. ¶ 6-7.)

20           Class Counsel also has particular expertise with the issues involved herein,

21   having been involved in over a dozen other similar cases in Federal Courts

22   involving credit card rate increases[6], including the *McCoy* proceeding, where he is

23   now on the briefs in the pending U.S. Supreme Court proceeding, and in which he

24   had previously obtained a favorable opinion from the Ninth Circuit Court of

25   Appeals (<u>McCoy v. Chase Manhattan Bank, USA, N.A.</u>, 559 F.3d 963 (9th Cir.

26

27       [5]  Brian R. Strange also has over 20 years experience as an attorney, while his
     partner, Gretchen A. Carpenter, has over 15.

28
         [6]  Strange & Carpenter also formerly participated in some of these cases.

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

2009, now vacated)).  (Kramer Decl. ¶ 8.)

**(10) The 'undesirability' of the case**

The undesirability of this type of case is clearly demonstrated by the fact that numerous cases involving the same central issue as herein have been rejected at the trial and appellate court levels.  (Kramer Decl. ¶ 25.) These include the following: <u>Augustine vs. Bank of America</u>, U.S.D.C. (E.D. Cal.) case no. 2:06-CV-02013-GEB (lost on preemption grounds); <u>McCoy v. Chase Manhattan Bank</u>, U.S.D.C. (C.D. Cal.) case no. SACV 06-0107-JVS (lost on the merits, won on appeal, now on review before the U.S. Supreme Court); <u>Shaner v. Chase Bank</u>, U.S.D.C. (Mass.) case no. 1:07-CV-11766-GAO (lost on the merits, affirmed on appeal before the First Circuit); <u>Puleo v. Chase Bank</u>, U.S.D.C. (E.D. Pa.) case no. 07-4800 (lost on arbitration issue, affirmed on appeal); <u>Cicle v. Chase Bank</u> U.S.D.C. (W.D. Mo.) case no. 07:4103-CV-C-NKL (favorable ruling on arbitration issue was reversed on appeal by the Eighth Circuit); <u>Penner v. Chase Bank</u> U.S.D.C. (W.D. Wa.) case no. 3:06 CV-05092-FDB (lost on the merits, still pending before the Ninth Circuit); <u>Williams v. Washington Mutual</u> U.S.D.C. (E.D. Cal.) case no. 2:07-CV-02418-WBS (lost on merits, appeal was dismissed after Washington Mutual was taken over by the FDIC); <u>Yeomelakis v. Washington Mutual</u> U.S.D.C. (Mass.) case no. 07-11365-NG (loss in District Court was affirmed on appeal after Washington Mutual was taken over by the FDIC; and <u>Swanson v. Bank of America</u>, U.S.D.C. (N.D. Ill.) case no. 08-CV-184 (lost on the merits; affirmed on appeal before the Seventh Circuit in published opinion); and <u>Evans v. Chase Manhattan Bank</u>, U.S.D.C. (N.D. Cal.) case no. C 05-03968 SC (lost on merits; affirmed on appeal by Ninth Circuit in a  memorandum decision).

Furthermore, while this case was on appeal, as the result of the several adverse decisions in other cases regarding the central issue in this case, namely the interpretation of 12 C.F.R. § 226.9(c)(1), Class Counsel's former co-counsel herein, the law firm of Strange and Carpenter, concluded that this case was

ultimately unwinnable and withdrew as counsel of record in June 2008.  This was at a time before the Ninth Circuit issued its favorable opinion in the *McCoy* case, which has now been vacated and is under review by the U.S. Supreme Court.  (The Federal Reserve Board has recently filed an amicus brief in that proceeding opposing Plaintiff's position.)  Nevertheless, despite the risks involved, Class Counsel persisted with this litigation.  Thus, in addition to the obvious risk of obtaining no attorney fees whatsoever after spending considerable time on this litigation and advancing the costs thereof, Class Counsel took on the very real added risk that continuing litigation in the face of such adverse results might ultimately be claimed to be sanctionable (involving, *inter alia*, the prospect of a potentially devastating claim for attorney's fees under Federal Rules of Civil Procedure Rule 11(c)(4)).  Nevertheless, Class Counsel tenaciously pursued what he believed (and still believes) to be a meritorious theory.  In view of these considerations, this factor bears especial weight, and Class Counsel's tenacity should be rewarded in the lodestar multiplier.

**(11) The nature and length of the professional relationship with the client**

This factor is not particularly significant here.  Class Counsel's relationship with the Representative Plaintiff began in 2005 and has been limited to the present litigation.

**(12) Awards in similar cases**

As discussed more fully above, the attorney's fees requested herein are in line with common fund attorneys' fee awards in similar cases.

Accordingly the <u>Kerr</u> factors more than adequately support the lodestar multiplier implicit in Class Counsel's fee request, and because of the risks involved, they would indeed support a much higher multiplier.  As discussed above, Class Counsel was faced with the ever-present risk of recovering nothing at all, or even incurring severe penalties.  Thus, Class Counsel believes the $10

23

Notice & Application for Award of Attorneys' Fees & Costs and Incentive Award

1 million settlement described herein is an excellent result in light of the

2 circumstances in this action and in the best interest of all parties and the Court.

3 (See Kramer Decl., ¶ 25.)

4

5 **E.     This Court Should Award an Incentive Award in the Amount of $5,000**

6 **to Plaintiff Laura Hoffman**

7         Representative Plaintiff Laura Hoffman also respectfully requests that she

8 be awarded an incentive in the amount of $5,000.00 to compensate her for serving

9 as the representative plaintiff and for her time and effort in assisting Counsel to

10 pursue this important case.  Defendant has agreed to pay such an incentive award.

11 Plaintiff took time away from her day to day business to assist and prosecute in

12 this action, and should be rewarded for the time, risk and trouble taken in

13 prosecuting and supporting this litigation.  Such awards are customary in class

14 action litigation and serve the important purpose of recognizing and rewarding the

15 efforts of Plaintiff, who assumed the responsibilities of litigation on behalf of the

16 class members whose interests she represents.  As noted in <u>Rodriguez v. West</u>

17 <u>Publ'g Corp.</u>, 563 F.3d 948, 958-959 (9th Cir. Cal. 2009): "Incentive awards are

18 fairly typical in class action cases. ... Such awards are discretionary... and are

19 intended to compensate class representatives for work done on behalf of the class,

20 to make up for financial or reputational risk undertaken in bringing the action...."

21 But for the Plaintiff's efforts, the Settlement Class would not have been

22 compensated by this case.

23

24                         **IV.   CONCLUSION**

25         Substantial effort on the part of Class Counsel and his former co-counsel

26 has gone into the prosecution of this action for the benefit of the Settlement Class.

27 These efforts were performed entirely on a contingent basis, despite significant

28 risks and in the face of determined, resourceful opposition.  A reasonable fee

commensurate with the benefit conferred should be awarded.  The fee requested is such a reasonable fee.  Defendant's counsel have agreed the fee request is reasonable.  Class Counsel respectfully request that the Court enter an Order awarding attorneys' fees and costs and expenses in the amount of $2,500,000.00 to Class Counsel for his and his former co-counsel's work performed in obtaining this settlement with Defendant, and an incentive award to the named Representative Plaintiff in the amount of $5,000.00 for her time and effort in assisting Class Counsel.

Dated: November 22, 2010

Respectfully Submitted,

Law Offices of Barry L. Kramer

 /S/ - Barry L. Kramer
Attorney for Plaintiff